Joseph **PROBE** and Donald Simmons, et al., **Plaintiffs/Appellees/Cross-Appellants,**

v.

**STATE TEACHERS' RETIREMENT SYSTEM** and Teachers' Retirement Board, **Defendants/Appellants/Cross-Appellees.**

Nos. 81–5865, 81–5866.

United States Court of Appeals, Ninth Circuit.

Argued July 7, 1982.

Submitted Aug. 1, 1983.

Decided Jan. 13, 1986.

Richard D. Sommers, Robert M. Dohrmann, Schwartz, Steinsapir, Dohrmann, Krepack, Sommers, & Edelstein, Los Angeles, Cal., for plaintiffs/appellees/cross-appellants.

Thomas Sheerer, Deputy Atty. Gen., Los Angeles, Cal., for defendants/appellants/cross-appellees.

Before ALARCON, POOLE, and BOO-CHEVER, Circuit Judges.

POOLE, Circuit Judge:

The State Teachers' Retirement System and the Teachers' Retirement Board ["STRS"] appeal from a summary judgment in favor of plaintiffs and their class in a Title VII action, and in favor of plaintiffs Joseph Probe, Donald Simmons, and George Wing, individually, in an Equal Pay Act action. The district court, holding that STRS had violated both statutes, enjoined STRS from using sex-segregated actuarial tables in calculating benefits under its retirement plans. The court ordered STRS to equalize pension benefits for those class members who are currently retired and receiving benefits, but refused to order full retroactive relief under Title VII. The court awarded plaintiffs attorneys' fees in the amount of $66,116.25.

STRS appeals this decision and challenges the class certification and the amount of attorneys' fees awarded. Plaintiffs cross-appeal from the district court's refusal to grant retroactive relief.

## I.

STRS provides retirement benefits for public school teachers in the State of California. Cal.Educ.Code §§ 22000–24944 (West 1978 & Supp.1985). Each teacher makes contributions to STRS based upon his salary. The state and the public school districts also contribute to the fund. While membership in STRS is generally mandatory, upon retirement an employee may withdraw from STRS by removing his accumulated contributions, but then forfeits any entitlement to contributions made by the state and the school districts.

At the time this litigation was instituted, an employee remaining under STRS could choose from three alternative retirement plans. He could elect an "unmodified allowance," which is computed on the basis of highest compensation, years of service, and retirement age.[1] Under this plan, sex is not considered. A retiree electing such an unmodified allowance receives a monthly benefit until his death, at which time all payments cease. An employee could also select either of two optional plans. In each, the employee designates a beneficiary and either or both receive a monthly allowance during their lifetimes based upon the present value of the employee's unmodified allowance, discounted to account for the possibility that the beneficiary may outlive the employee.[2]

To calculate the present value of the unmodified allowance, STRS must estimate the life expectancy of the retiree. In making this estimation, STRS utilizes sex-based mortality tables. STRS also utilizes these tables to determine the discount to be applied to account for the addition of the beneficiary. Because women as a group statistically outlive men, the present value of a female employee's unmodified allowance will be greater than the present value of the unmodified allowance of a similarly

---

**1.** The unmodified allowance is computed by multiplying the retiree's highest final compensation by the retiree's total years of service and by an age factor. Cal.Educ.Code § 24000 (West Supp.1985). The highest final compensation is the average monthly compensation during the three highest years of compensation. Cal.Educ. Code § 22127 (West Supp.1985). For example, a 60-year retiree, whether male or female, with a highest final compensation of $2,000 per month and 32 years of service will receive a monthly retirement benefit of $1,280 computed as follows: $2,000 (highest monthly compensation) × 32 (years of service) × .02 (age factor).

**2.** In Option 2, the retiree and his beneficiary are entitled to a fixed allowance for their combined lives. Cal.Educ.Code § 24200(a) (West Supp.

1985). In Option 3, the retiree is entitled to an allowance until his death; if his beneficiary outlives him, the beneficiary is entitled to one-half of the retiree's allowance during the balance of the beneficiary's lifetime. *Id.* at § 24200(b).

Currently, the state offers two additional optional plans. These plans also allow the retiree to name a beneficiary and pay out monthly benefits that are actuarially modified. In Option 4, the retiree is entitled to an allowance so long as both the retiree and the beneficiary are living; upon the death of either, the survivor is entitled to two-thirds of the retiree's allowance. *Id.* at 24200(c). Option 5 is the same as Option 4, except that the survivor is entitled to one-half of the retiree's allowance. *Id.* at § 24200(d).

situated male employee. As a result, male employees electing either Option 2 or Option 3 and their beneficiaries receive a smaller allowance than similarly situated female employees and their beneficiaries.

A relevant example may be found in the hypothetical situation where a male and female retiree, both age 60 and qualifying for the same unmodified allowance, elect to designate a beneficiary under Option 2. STRS will then calculate the present value of each retiree's unmodified allowance. Because sex-based mortality tables will project a shorter life span for the male retiree, the present value of his unmodified allowance will be less than that of the female retiree. If both retirees designate a female beneficiary with an expected life span, at the date of election, of 30 years, a life span longer than that projected for both retirees, the monthly benefits to be paid the male retiree and his beneficiary will be less than those to be paid the female retiree and her beneficiary. This is because the present value of each retiree's unmodified allowance must be extended over the longer life span of the beneficiary. Since the male retiree has a smaller present value for his unmodified allowance, he has less benefits to extend over the estimated 30–year pay out period of the annuity plan. Thus, males equally situated with females receive lower benefits based squarely on their sex.

Plaintiffs brought this action in the district court alleging that STRS violates § 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a), by administering an annuity plan that discriminates on the basis of sex. They also alleged that STRS violated the Equal Pay Act, 29 U.S.C. § 206(d), for the same reasons. Plaintiffs sought certification of a class under Federal Rule of Civil Procedure 23(b)(2) as to the Title VII claim consisting of all male certified employees "who were (since February 8, 1976), are or will be employed in positions entitling them to membership in STRS, and who are currently receiving, eligible to receive or in the future will receive or may be eligible to receive retirement benefits from STRS under Option 2

or 3 as provided in Education Code, Section 24200."

On September 8, 1980, the district court granted certification of the class as requested on the Title VII claim. On cross-motions for summary judgment, the district court held that STRS' retirement system violated Title VII. The court also granted summary judgment for plaintiffs Joseph Probe, Donald Simmons, and George Wing on their Equal Pay Act claims but dismissed the Equal Pay Act claims as to the other named plaintiffs on the ground that since they had not yet retired, the injunctive relief granted under Title VII afforded those plaintiffs the relief they requested. The court ordered STRS to equalize the retirement benefits paid to plaintiffs Probe, Simmons and Wing and for plaintiff class members who are currently retired and receiving benefits under Option 2 or Option 3 and for those class members who thereafter retire and elect to receive retirement benefits under those options. The court also enjoined STRS from paying retirement benefits pursuant to Option 2 or Option 3 by reference to sex-based mortality tables and awarded plaintiffs $66,116.25 in attorneys' fees. We affirm in part, and reverse and remand in part.

## II.

STRS argues that the district court erred in certifying the Title VII claims as a class action because (1) the motion for certification was untimely; (2) an action with both individual and class claims is confusing and unmanageable; (3) the class is ill-defined; (4) the class was improperly certified under Rule 23(b)(2) because damages were sought; and (5) there exists a danger of conflicts within the class. Class certification is a matter within the district court's discretion, and is reviewed to determine whether there has been an abuse of discretion and application of impermissible legal standards. *Hatch v. Reliance Insurance Co.,* 758 F.2d 409, 416 (9th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

■ STRS argues that the district court should have denied the motion for class certification as untimely because plaintiffs waited eighteen months from the filing of the original complaint before seeking class certification. *See Adise v. Mather*, 56 F.R.D. 492, 494–95 (D.Colo.1972). We conclude that the delay was reasonable. The original complaint stated only a claim under the Equal Pay Act. The second amended complaint at issue here was filed February 7, 1980 and added the Title VII claim. Plaintiffs filed their motion for class certification on August 1, 1980. During the intervening period, STRS filed its answer to the second amended complaint, and the plaintiffs instituted discovery to determine the number of class members. STRS does not claim that it was prejudiced by the delay. Under these circumstances, we find that the district court did not abuse its discretion in concluding that plaintiffs' request for class certification was timely.

■ Next, STRS argues that because the action contains individual Equal Pay Act claims in addition to the Title VII class claims, it is confusing and unmanageable. The Federal Rules of Civil Procedure, however, permit actions involving both class and individual claims. Fed.R.Civ.P. 23(c)(4) ("When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues * * * * "). We note that actions involving both individual and class claims are not uncommon. *E.g., Marshall v. Kirkland*, 602 F.2d 1282 (8th Cir.1979); *EEOC v. General Telephone Co.*, 599 F.2d 322 (9th Cir.1979), *aff'd* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Since STRS does not raise any particular problems posed by the plaintiffs' pursuit of both individual and class claims, we find that the district court's decision to certify the Title VII cause of action as a class claim was not an abuse of discretion.

■ STRS also contends that the class as defined "seems to include every male person in the world" and thus is too ill-defined to conform to Rule 23. The fact that the class includes future members does not render the class definition so vague as to preclude certification. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1760 at 580–81 (1972). The class here is sufficiently definite to conform to Rule 23.

■ STRS argues that this action may not proceed as a class action under Rule 23(b)(2) because plaintiffs request damages as well as injunctive relief.[3] This argument is without merit. Class actions certified under Rule 23(b)(2) are not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages. *EEOC v. General Telephone Co.*, 599 F.2d at 334; *accord* 7A C. Wright & A. Miller, Federal Practice and Procedure § 1775 at 23–24 (1972). Although plaintiffs request money damages in this suit, such a claim is merely incidental to their primary claim for injunctive relief to prohibit the use of sex-based mortality tables. Thus, plaintiffs' request for money damages does not prevent class certification under Rule 23(b)(2).

Finally, STRS argues that there exists a danger of conflict within the class.[4] STRS notes that plaintiffs are pursuing their Equal Pay Act claims individually and suggests that pursuit of these claims may arouse suspicion among the class members that the named plaintiffs are not giving adequate attention to the Title VII claim. As discussed above, however, it is not impermissible for plaintiffs to pursue both

---

**3.** Rule 23(b)(2) provides:

An action may be is maintained as as class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or correspond-ing declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2).

**4.** Under Rule 23 of the Federal Rules of Civil Procedure, one of the prerequisites to a class action is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).

class and individual claims in the same action. That fact that plaintiffs are concurrently pursuing their individual Equal Pay Act claims does not automatically prevent them from adequately representing the interests of the class members.

■ STRS also argues that there is a conflict between currently retired teachers and teachers presently working, because if the court orders higher benefits, presently working teachers will have to make larger contributions. In addition, STRS claims that it may be forced to dismantle the Option system if this court rules that use of sex-based mortality tables is unlawful, and thus male teachers who wish to provide for a beneficiary will be injured by the success of this suit. We find that neither of these considerations constitutes a "conflict" rendering certification of the class by the district court an abuse of discretion. First, we note that whether plaintiffs proceed on an individual or on a class suit basis, the requested injunctive relief they seek will generally benefit not only plaintiffs but other persons subject to the state teachers' retirement system as well. Moreover, if the state plan is found to violate Title VII, it will be invalidated notwithstanding the fact that there may be some who would prefer that it remain in operation. *See* 7 C. Wright & A. Miller, Federal Practice and Procedure § 1771 at 663–64 (1972). Thus, we conclude that the district court properly exercised its discretion in certifying the Title VII claims as a class action.

### III.

Submission of this case was vacated and deferred until resolution by the United States Supreme Court of *Norris v. Arizona Governing Committee, etc., et al.,* 671 F.2d 330 (9th Cir.), *cert. granted,* 459 U.S. 904, 103 S.Ct. 205, 74 L.Ed.2d 164 (1982). The Supreme Court has since decided in *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris,* 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), that Title VII prohibits an employer from offering its employees the option of receiving, from one of several companies selected by the employer, retirement benefits which are calculated by the use of sex-based actuarial tables with the result that women receive lower monthly benefits than men who have made the same contributions. We conclude that *Norris* controls this case, and we find that the optional retirement plan administered by STRS also violates Title VII.

Title VII makes it an unlawful employment practice "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

In *Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), the Supreme Court held that Title VII was directed toward discrimination against individuals, not classes, and found that even though women as a class statistically outlive men, an employer could not require larger pension fund contributions from female employees in order for them to be entitled to the same monthly benefits as male employees upon retirement. In *Norris,* the Court further held that the classification of employees on the basis of sex is no more permissible at the pay-out stage of a retirement plan than at the pay-in stage. 463 U.S. at 1081, 103 S.Ct. at 3496 (Marshall, J., concurring in the judgment in part). This is because Title VII does not permit an employer to classify employees on the basis of sex in predicting their longevity. *Id.* at 1083, 103 S.Ct. at 3497. "The use of sex-segregated actuarial tables to calculate retirement benefits violates Title VII whether or not the tables reflect an accurate prediction of the longevity of women as a class, for under the statute '[e]ven a true generalization about [a] class' cannot justify class-based treatment." *Id.* at 1084, 103 S.Ct. at 3498 (quoting *Manhart,* 435 U.S. at 708, 98 S.Ct. at 1375) (footnote omitted).

■ We find that the plan administered by STRS, like the plan in *Norris,* impermis-

sibly discriminates on the basis of sex because a man and a woman who retire with the same unmodified monthly allowance and who choose to participate in either the Option 2 or Option 3 plan, naming identical beneficiaries, will not receive identical monthly benefits. An individual man may not be paid lower monthly benefits simply because men as a class live a shorter time than women. *See Norris*, 463 U.S. at 1085, 103 S.Ct. at 3499.

Furthermore, the fact that STRS provides equal benefits to both men and women selecting the unmodified allowance does not insulate the plan from attack under Title VII. "An employer that offers one fringe benefit on a discriminatory basis cannot escape liability because he also offers other benefits on a nondiscriminatory basis." *Id.* at 1082 n. 10, 103 S.Ct. at 3497 n. 10. The plan also is not saved by the fact that the monthly benefits under the options are based on the nondiscriminatory unmodified allowance. It is the calculation of the present discounted value of that allowance in a sexually discriminatory manner that is illegal under *Norris*.

Finally, it is irrelevant that the employees under STRS are free to withdraw their accumulated contributions from the fund and invest those contributions in any way they wish.[5] Title VII applies to both mandatory and voluntary pension plans. *Id.* at 1081 n. 10, 103 S.Ct. at 3497 n. 10.

Although we affirm the district court's holding that the plan administered by STRS violates Title VII, we must decide whether the relief ordered by the district court is proper. The court enjoined STRS from paying further retirement benefits pursuant to Option 2 or Option 3 by reference to sex-based actuarial tables. Because these annuity payments are funded by past contributions from the employee, state, and school districts, the relief ordered here, affecting all benefit payments made after the district court's judgment, is fundamentally retroactive in nature. *See Norris*, 463 U.S. at 1092, 103 S.Ct. at 3502 (Marshall, J.,

concurring in the judgment in part); *id.* at 1105 n. 10, 103 S.Ct. at 3510 n. 10 (Powell, J., concurring in part).

We begin our analysis by recognizing that once a violation of Title VII is found, retroactive relief "should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975) (footnote omitted). However, the Supreme Court has made clear that such retroactive relief is not automatic when an employer-sponsored pension program is held to violate Title VII. *See Norris*, 463 U.S. at 1075, 103 S.Ct. at 3494 (per curiam); *Manhart*, 435 U.S. at 719, 98 S.Ct. at 1380. As Justice Powell, who wrote the majority opinion in *Norris* on the issue of relief, pointed out, "[t]he business of underwriting insurance and life annuities requires careful approximation of risk. * * * Should an unforeseen contingency occur, such as a drastic change in the legal rules governing pension and insurance funds, both the insurer's solvency and the insured's benefits could be jeopardized." 463 U.S. at 1106, 103 S.Ct. at 3510 (citing *Manhart*, 435 U.S. at 721, 98 S.Ct. at 1382). Accordingly, retroactive relief will be denied when an employer was not on notice by prior judicial decisions that its pension program was unlawful. *See id.; Manhart*, 435 U.S. at 720–21, 98 S.Ct. at 1381–82.

While *Manhart* put all employer-operated pension funds on notice that they could not require men and women to make unequal contributions to the fund, it expressly held that an employer could set aside equal contributions and let each retiree purchase whatever benefit is available on the "open market." 435 U.S. at 717–18, 98 S.Ct. at 1380. Thus, STRS reasonably could have assumed that it was lawful to

---

**5.** We note that this is not a very realistic option since an employee may withdraw only his own contributions and not those made by the state and the school districts.

provide an optional annuity system that reflected plans offered by insurance companies on the open market. Under these circumstances, we conclude that full retroactive relief is not appropriate.

These circumstances, however, changed once the Supreme Court decided *Norris*. That case clearly put employer-operated pension funds on notice that they could not determine monthly retirement benefits by reference to sex-segregated mortality tables. Once on notice, an employer could reassess its risk and restructure its pension fund for future contributions so as to comply with the mandate in *Norris*. On this basis, we hold that benefits derived from contributions made prior to the Supreme Court's decision in *Norris* may be calculated as provided by the existing terms of the STRS plan. However, any benefits derived from contributions made after that decision must be recalculated without regard to the sex of the retiree. Accordingly, the district court's judgment on the Title VII issue is affirmed in part, reversed in part, and remanded.

## IV.

The named plaintiffs also brought individual actions against STRS claiming that the use of sex-segregated mortality tables in calculating benefits to be paid under Option 2 and Option 3 violates the Equal Pay Act, 29 U.S.C. § 206(d)(1). Plaintiffs Probe, Simmons, and Wing prevailed on their claims; however, the district court refused to grant relief as to the other named plaintiffs since these plaintiffs had not yet retired and therefore were not entitled to damages under the Act. These plaintiffs do not appeal the district court's denial of their Equal Pay Act claims. Thus, only that part of the district court's judgment with respect to plaintiffs Probe, Simmons, and Wing is before us on appeal.

The Equal Pay Act prohibits an employer subject to its provisions from discrimina-

ting on the basis of sex in the payment of wages. *Spaulding v. University of Washington*, 740 F.2d 686, 696 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). While the Supreme Court has held that pension benefits are "compensation" under Title VII, it has declined to decide whether retirement benefits constitute "wages" under the Equal Pay Act. *Norris*, 463 U.S. at 1080 n. 8, 103 S.Ct. at 3496 n. 8 (Marshall, J., concurring in the judgment in part); *Manhart*, 435 U.S. at 712 n. 23, 98 S.Ct. at 1377 n. 23. We also need not decide this issue since, assuming we were to find that the STRS retirement plan violates the Equal Pay Act, the retroactivity analysis of *Norris* and *Manhart* would preclude awarding relief to plaintiffs Probe, Simmons, and Wing since each was already retired when they brought their claims.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 105–109, 92 S.Ct. 349, 354–356, 30 L.Ed.2d 296 (1971), the Supreme Court set forth three criteria for determining when to apply a judicial decision of statutory interpretation prospectively.[6] We find that all three criteria would preclude giving retroactive effect to a decision that the plan at issue violates the Equal Pay Act. First, such a decision would establish a new principle of law which was not clearly foreshadowed. As previously stated, no court has yet decided whether pension benefits constitute wages under the Equal Pay Act.

Second, we believe that while retroactive application of such a ruling would not retard the purposes of the Equal Pay Act, the Act's goal of ensuring equal pay for equal work would not require retroactivity. Following the reasoning of one member of the *Norris* Court, we "see no reason to believe that a retroactive holding [would be] necessary to ensure that pension plan administrators, who may have thought until [a] decision today that [the Equal Pay

---

**6.** Under the three-part test, a court should consider (1) whether the decision established a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly fore-shadowed; (2) whether retroactive effect of the decision would further or retard the operation of the statute; and (3) whether retroactive application would impose an equitable result. *Chevron Oil Co.*, 404 U.S. at 106–07, 92 S.Ct. at 355.

Act] did not extend to [pension] plans * *, [would] not * * * quickly conform their plans to ensure that individual employees are allowed equal monthly benefits regardless of sex." 463 U.S. at 1110, 103 S.Ct. at 3512 (O'Connor, J., concurring).

Most importantly, the last criterion—whether retroactive application would impose inequitable results—would require that such a decision be applied prospectively. If employees who retired prior to the Supreme Court's decision in *Norris* could sue to have their annuity payments increased under the Equal Pay Act, then the Supreme Court's limitation on retroactivity imposed in *Manhart* and *Norris* would be circumvented and employer-operated pension funds would face potentially devastating financial pressures. This real danger of bankrupting pension funds would preclude giving retroactive effect to a decision that the plan at issue violates the Equal Pay Act.

In view of our decision on the Title VII class action and given the Supreme Court's holding in *Norris* that relief should be given only as to pension fund contributions made subsequent to the date of that opinion, a decision at this time on whether a violation of the Equal Pay Act is stated in this case is unwarranted, and we decline to reach it. We note that class-wide relief has been afforded by Title VII since those class members retiring after July 6, 1983 will receive benefits calculated pursuant to *Norris*. Accordingly, we reverse the district court's judgment in favor of plaintiffs Probe, Simmons, and Wing on their Equal Pay Act claims.

### V.

The district court awarded plaintiffs $66,116.25 in attorneys' fees pursuant to 42 U.S.C. § 2000e–5(k) (1982). STRS argues that the amount of attorneys' fees awarded is excessive because (1) the district court did not take into account duplication of effort, (2) plaintiffs prevailed against only one of the six original defendants, (3) plaintiffs' "victory" hurts female employees more than it helps male employees, and (4) some of plaintiffs' expenses are unrelated to the lawsuit. We review the district court's determination of the amount of attorneys' fees for an abuse of discretion. *Optyl Eyewear Fashion International Corp. v. Style Companies*, 760 F.2d 1045, 1048 (9th Cir.1985); *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1384 (9th Cir. 1984).

Initially, we observe that the fee amount awarded by the district court was apparently based on a stipulation between the parties that

the table set forth below reflects the attorneys' fees to be awarded plaintiffs' counsel in accordance with the Court's decision announced March 16, 1981. The hours listed below include all hours expended by plaintiffs' counsel through and including March 16, 1981.

| | |
|---|---|
| Partners' hours | $43,225.00 |
| (247 hours at $175/hour) | |
| Senior Associates' hours | 16,156.25 |
| (129.25 hours at $125/hour) | |
| Junior Associates' hours | 6,735.00 |
| (112.25 hours at $60/hour) | |
| TOTAL | $66,116.25 |

The stipulation was signed by both parties and by the district judge. If the document is in fact a stipulation, STRS would be barred from challenging the amount awarded. However, the district court's decision awarding fees makes no reference to the stipulation and instead appears to review independently the fee request. In addition, plaintiffs do not raise the stipulation as a bar to STRS' appeal of this issue. Under these circumstances, we find it unnecessary to characterize the document as a binding stipulation and choose to review the fee award.

■ In determining the amount of fees to be awarded, a district court is to consider the guidelines set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Here, the district court did not explicitly apply these factors, but did examine the following considerations: "[T]he reasonable hours expended by counsel, the reasonable hourly rate prevailing in the community for

similar legal services, the contingent nature of success, including the delayed receipt of payment for the services rendered, the quality of representation, and the results obtained." Although we do not sanction the district court's failure to explicitly set forth its consideration of the *Kerr* factors, we believe that the court's decision, which sets forth a consideration of the most relevant factors, is sufficiently detailed for meaningful review on appeal. *See Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 838–39 (9th Cir.1982); *Harmon v. San Diego County*, 664 F.2d 770, 772 (9th Cir.1982) (as amended). Thus, we now turn to STRS' specific contentions.

■■■ STRS contends that plaintiffs' counsel incurred unnecessary litigation expense by assigning more than one attorney to the case, and in sending more than one attorney to some of the hearings. Hours that are excessive, redundant, or otherwise unnecessary are to be excluded when calculating a reasonable attorneys' fee. *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1027 (9th Cir.1985) (as amended).[7] However, in an important class action litigation such as this, the participation of more than one attorney does not constitute an unnecessary duplication of effort.

■■■■ STRS argues that because the action was dismissed as to five of the six original defendants, plaintiffs were not entitled to recover the entire amount of their litigation expenses. We disagree. The extent of a plaintiff's success is a crucial factor in determining the proper amount of fees to be awarded. *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943; *Transgo, Inc.*, 768 F.2d at 1027. Despite the release of the other defendants, plaintiffs achieved the major relief they sought in this case—a court decision preventing STRS from using sex-segregated mortality tables in calculating pension benefits. "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. Because plaintiffs obtained substantial class-wide relief on their Title VII claim, no reduction of fees is warranted.

STRS also argues that the result plaintiffs will obtain if they ultimately prevail does not justify the amount of attorneys' fees awarded because STRS may then delete the option system, thereby harming all employees, or STRS may convert to sex-neutral mortality tables which will make the options unattractive to female retirees. We find STRS' first contention speculative. Our decision today does not mandate eradication of the option system. As to the second contention, the fact that adoption of sex-neutral mortality tables may result in the future in lower monthly retirement benefits being paid to women electing one of the optional plans is irrelevant to the issue whether plaintiffs have sufficiently prevailed to merit a full fee award. If the benefits paid to women have to be reduced as a result of our decision today, it is only because their prior calculation was done in a manner so as to violate Title VII.

Finally, STRS contends that some of the plaintiffs' requested fees should have been excluded because they were unrelated to the litigation. The district court, however, implicitly found against STRS on this issue, and we conclude that this finding is not clearly erroneous. Therefore, that part of the district court's judgment awarding attorneys' fees is affirmed.

## VI.

The judgment of the district court is AFFIRMED IN PART, REVERSED IN PART and REMANDED for proceedings consistent with this opinion. Plaintiffs,

---

**7.** Although *Hensley* dealt with an award of attorneys' fees under 42 U.S.C. § 1988, the Court specifically held that the standards set forth in its opinion were generally applicable "in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" 461 U.S. at 433 n. 7, 103 S.Ct. at 1939 n. 7.

having prevailed on appeal, are entitled to attorneys' fees which the district court is requested to determine according to law.