Audrey T. CELESTINE, et al.

v.

CITGO PETROLEUM CORPORATION,
et al.

No. 93–0864.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Sept. 11, 1995.

---

Charles E. Cotton, New Orleans, LA, Charles R. Grady, New Orleans, LA, Stuart M. Nelkin, Nelkin & Nelkin, Houston, TX, Mark A. Delphin, Lake Charles, LA, for all Plaintiffs.

Robert L. Wiggins, Jr., Robert F. Childs, Jr., Rocco Calamusa, Jr., Gordon Silberman, Wiggins & Childs, Birmingham, AL, for Plaintiffs.

Walter W. Christy, Kullman Inman, Bee Downing & Banta, New Orleans, LA, for Defendants.

Louis L. Robein, Jr., Nancy Picard, Robein Urann & Lurye, Metairie, LA, for Lake Charles Metal Trades Council.

## JUDGMENT

TRIMBLE, District Judge.

IT IS ORDERED, ADJUDGED, AND DECREED that after a *de novo* review of the issues and consideration of the objections filed herein, this court has determined that the findings contained in the Magistrate Judge's Report and Recommendation [filed on August 7, 1995] are correct under the applicable law. Therefore, it is

ORDERED that the "Motion to Determine Propriety of and Define Class" [Doc. 38] be and it is hereby DENIED.

IT IS ALSO ORDERED, ADJUDGED, AND DECREED that the Magistrate Judge's finding that Mr. Earl Lemell did not file suit within 90 days of receipt of his right to sue letter which was issued on September 21, 1988, is affirmed. Therefore, it is

ORDERED that the plaintiffs cannot rely on Earl Lemell's EEOC charge to support their Title VII claims.

THUS DONE AND SIGNED.

### REPORT AND RECOMMENDATION

WILSON, United States Magistrate Judge.

Currently before the court is a "Motion to Determine Propriety of and Define Class" [Doc. 38] filed by all plaintiffs in the above-captioned civil rights matter. This matter was referred to the undersigned Magistrate Judge for hearing, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B). A hearing on the issue of class certification was held on May 30, 1995.

By this motion, the plaintiffs seek to have this court certify this matter as a class action. Plaintiffs claim that the putative class consists of more than 1000 potential plaintiffs which includes

All African–American employees and applicants of Citgo Petroleum Corporation (Citgo) from April 11, 1979 until the present.

By this proposed class action, the plaintiffs seek to challenge the promotions/pay, hiring/pay, testing, and training policies and procedures of Citgo which they claim are racially discriminatory on a classwide basis.

They also allege that there is a racially hostile work environment at Citgo.

The defendants oppose this motion, contending that no class should be certified. However, they argue that if the court finds that a class should, in fact, be certified, the class should be limited as follows:

> All black employees, who since May 1, 1992, have worked in a position represented by a collective bargaining agreement, excluding all other positions.

The defendants propose to limit any class that may be certified to the following issues: alleged racial discrimination in promotions, training, testing, and possibly hostile work environment which arose on or after May 1, 1992. The defendants further contend that any claims on behalf of black applicants should be limited to black persons who submitted applications for hourly, bargaining unit positions, on or after March 9, 1994 for purposes of claims brought pursuant to 42 U.S.C. § 1981 and La.R.S. 23:1006 and on or after September 8, 1994 for claims brought pursuant to Title VII.[1]

## CLASS CERTIFICATION

The plaintiffs argue that the class they seek to represent should be certified under Rule 23(b)(2) of the Federal Rules of Civil Procedure. They contend that a class action will be the most effective and efficient way to handle the claims of the various class members. The defendants oppose the motion to certify the class. The defendants claim that the "class claims" are truly individual claims for damages.

In order for class certification to be appropriate, the plaintiffs must establish that their putative class satisfies all of the requirements of Rule 23(a) and at least one of the subsections of Rule 23(b). Rule 23(a) has four requirements, numerosity, commonality, typicality, and adequacy of representation.

### Rule 23(a) Requirements

#### Numerosity

To meet the numerosity requirement of Rule 23(a)(1), it is not necessary for the plaintiffs to establish the exact number of potential class members or to individually identify these persons. However, the number of potential class members must be so numerous as to make joinder of all of these persons impractical. Plaintiff alleges that the putative class consists of more than 1000 persons. Although the defendants disagree with the number of putative class members suggested by the plaintiffs, they do not seriously contest the satisfaction of the numerosity requirement. Accordingly, this court finds that the plaintiffs have satisfied the numerosity requirement.

#### Commonality

The commonality requirement in Rule 23(a)(2) is satisfied if there are "common questions of law or fact among the class members." There is no need for the claims to be identical rather the class members must be linked by a common complaint. The Fifth Circuit has stated that the threshold requirement for commonality is not high as "the commonality requirement is met when there is 'at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993) quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982); *Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir.1993).

The plaintiffs claim that their claims are common to all class members as they primarily involve a challenge to the hiring, training, promotion, and testing policies and procedures of Citgo to which all of Citgo employees and applicants have been subjected at least in part. The plaintiffs seek both injunctive relief and monetary damages.

---

1. The defendants arrive at the date for the Title VII claims for applicants by relying on the EEOC charge filed by Jonathan Anderson on March 7, 1995 and signed by Hillary Randall on March 6, 1995. All viable EEOC claims must have arisen within 180 days of the filing of Anderson's EEOC charge. The March 9, 1994 cut-off date for the applicants' claims under 42 U.S.C. § 1981 and La.R.S. 23:1006 is calculated as one year prior to the filing of the complaints-in-intervention by Jonathan Anderson and Hillary Randall on March 9, 1995.

The defendants challenge the plaintiffs' characterization of their claims as common. They argue that the plaintiffs' claims are individualized complaints which require a particularized evaluation of the facts surrounding each plaintiff's specific situation. The defendants point out that the putative class which the plaintiffs seek to certify includes applicants as well as employees who were employed at two separate plant facilities and belonged to six different unions with different requirements for admission and advancement. Thus, the defendants argue that the claims of the plaintiffs are not common but individual and fact specific. The defendants also contend that the claim for individual monetary damages causes there to be a lack of commonality. However, the Fifth Circuit has indicated that the necessity for an individual calculation of damages is not a basis for defeating commonality. *Forbush*, 994 F.2d at 1106.

Although there may be differences in the opportunities available to the employees, the plaintiffs complain about general hiring, training, and promotional policies which allegedly affect all persons seeking employment and those seeking advancement once employed. Specifically, the policies which the plaintiffs complain about are: (1) the refusal to post or announce job vacancies; (2) the use of informal word of mouth announcement process of filling job vacancies; (3) the use of biased tests to evaluate candidates for hiring or advancement; and (4) the use of subjective judgments in reviewing and evaluating applicants for hire and employees for advancement. Thus, each plaintiff's claim arises from this general policy which affects all aspects of Citgo's workforce regardless of the specific area in which he or she may work. The issue of whether these employment practices of Citgo have an adverse effect on black employees is a question common to all plaintiffs. Therefore, this court finds that commonality is present as a central issue involved in this case is whether Citgo's employment policies and procedures have a discriminatory effect of the putative class members.

## Typicality

Rule 23(a)(3) requires also that the representative plaintiffs possess claims which are typical of the class. In essence, it is necessary for the representative plaintiffs to possess the same interests and suffer the same injuries as the proposed class. *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D.Kan.1995). Like the commonality requirement, the typicality requirement is not demanding. *Forbush*, 994 F.2d at 1106. While there may be some factual differences between the named plaintiffs' claims and the claims of some of the class members, this court finds that the named plaintiffs have asserted claims which are typical of the class they seek to represent in that the plaintiffs challenge the employment policies and procedures in place at Citgo and allege that they have suffered discrimination as a result of the subjective criteria used by Citgo to hire, train, and promote.

## Adequate Representation

Finally, Rule 23(a)(4) requires that the class representatives fairly and adequately represent the class. This requirement is met when the interests of the class representatives are not in conflict with the interests of the class members and when counsel for the representative plaintiffs is qualified to conduct the litigation as a class action. The testimony at the hearing revealed that the interests of the class representatives are not in conflict with the interests of the putative class. Further, the attorneys who are representing the class representatives are experienced in the area of class actions and are qualified to conduct this litigation as a class action.

## Rule 23(b) Requirements

This court's inquiry into the appropriateness of class certification does not end after concluding that the requirements of Rule 23(a) are met. It is also necessary for the plaintiffs to establish that they meet at least one of the subsections under Rule 23(b). *Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 264 (D.D.C.1990) (party seeking class certification bears the burden of showing that all elements of Rule 23 are met). Plaintiffs seek

to have this class certified under Rule 23(b)(2). This provision provides as follows:

(b) **Class Action Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are met, and in addition: ...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

■ The primary limitation on the use of Rule 23(b)(2) is that injunctive and/or declaratory relief must be the predominant relief sought for the class. However, this does not preclude the class members from seeking monetary damages on a class wide basis as long as monetary relief is not the predominant relief sought. *Heartland Communications, Inc.* 161 F.R.D. at 117; *Probe v. State Teachers' Retirement System,* 780 F.2d 776, 780 (9th Cir.1986); *Jones v. Diamond,* 519 F.2d 1090, 1100 n. 17 (5th Cir.1975); 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 4.14 (3rd Ed.1992). The defendants allege that the plaintiffs' primary motive in bringing this lawsuit is to recover monetary damages. They allege that their policies and procedures were changed in 1991 thereby reducing the need for injunctive relief. However, the plaintiffs seek to challenge the current employment policies of Citgo which were implemented in 1991. Therefore, they argue that injunctive relief is the primary relief sought and that the request for monetary damages is merely incidental to the request for injunctive relief.

■ In order to determine whether the court should certify the case presently before it as a class action, the court must first determine whether injunctive and/or declaratory relief are the predominant types of relief sought. The determination of which type of relief is predominant is a matter within the sound discretion of the court. 1 *Newberg on Class Actions,* § 4.14; 7A

Wright and Miller, *Federal Practice and Procedure,* § 1775 p. 470.

Prior to the amendments to the Civil Rights Act of 1991, plaintiffs bringing a Title VII action could only seek injunctive relief and other equitable remedies such as back pay. Now the Civil Rights Act of 1991 makes compensatory and punitive damages available to plaintiffs in cases involving intentional discrimination, i.e. disparate treatment claims. However, because claims for compensatory and punitive damages are new types of claims allowed by the amendments to the Civil Rights Act of 1991, there is little law on the issue of how to determine what type of relief is predominant when a lawsuit seeks both injunctive relief and compensatory and punitive damages. This court is one of the first to address the issue of class certification in a Title VII case brought under the new provisions of the Civil Rights Act of 1991.[2]

As stated above, the determination of whether injunctive relief or monetary relief is the predominant type of relief sought is a matter largely within the discretion of the court. Because of this, courts often reach conflicting results when weighing the type of relief sought in order to determine which type is predominant. 1 *Newberg on Class Actions,* § 4.14; Lawrence J. Restieri, Jr., Note, *The Class Action Dilemma: The Certification of Classes Seeking Equitable Relief and Monetary Damages After Ticor Title Insurance Co., v. Brown,* 63 Fordham L.Rev. 1745 (1995). Prior case law provides some guidance as to the proper factors to consider when making this determination. Some courts focus on whether the request for monetary damages is integrally related to and would flow directly from the injunctive and/or declaratory relief sought. *Morgan v. Laborers Pension Trust Fund, Etc.,* 81 F.R.D. 669, 681 (N.D.Cal.1979); *Souza v. Scalone,* 64 F.R.D. 654, 658 (N.D.Cal.1974), vacated on other grounds 563 F.2d 385 (9th Cir.1977). Other courts focus on the cohesiveness of the class and the homogeneity of

---

**2.** The court notes that the United States Supreme Court has questioned the availability of class certification under Rule 23(b)(2) for cases which seek both injunctive relief and monetary damages. *See Ticor Title Insurance Co. v. Brown,* ——

U.S. ——, ——, 114 S.Ct. 1359, 1361, 128 L.Ed.2d 33 (1994); *see also Brown v. Ticor Title Ins. Co.,* 982 F.2d 386 (9th Cir.1992); *Arnold v. United Artists Theatre Circuit, Inc.,* 158 F.R.D. 439, 463 (N.D.Cal.1994).

the members' interests. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 462 (N.D.Cal.1994). Still others focus on whether the plaintiffs can demonstrate that there are issues common to both the claim for injunctive relief and the claim for monetary relief and that these common issues predominate. *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 627 (E.D.Pa.1976). Another inquiry made by courts is whether the injuries for which the damages aré sought arise out of conduct which is based on policies and procedures which are applicable to all plaintiffs and whether the question of damages would require individual inquiries and separate hearings. *Id.* The damage claim must not introduce significant individual liability or defense issues. *Id.*

In their complaint, the plaintiffs seek, "front pay, back pay, compensatory damages, punitive damages, pre-judgment interest, liquidated damages, injunctive and declaratory relief" to remedy their claims of disparate impact, disparate treatment, and hostile work environment. *See* Doc. 1. Injunctive relief may be an appropriate remedy to address all of these claims. However, the right to recover monetary damages is not integrally related to and does not flow directly from a finding that the plaintiffs are entitled to injunctive relief. Courts facing this issue have often decided that each plaintiff must establish that he or she was an actual victim of discrimination before he or she is entitled to employment, promotion, reinstatement, or backpay. *Dillon v. Coles*, 746 F.2d at 1004; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 263, 109 S.Ct. 1775, 1798, 104 L.Ed.2d 268 (1989) (concurring opinion) (if discrimination against a protected class is established as a standard practice, injunctive relief is appropriate but the liability phase as to individual claims is not complete); *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 874, 104 S.Ct. 2794, 2799, 81 L.Ed.2d 718 (1984) (even after finding of discriminatory pattern or practice, additional proceedings are ordinarily required to determine scope of individual relief); *Shipes v. Trinity Industries*, 987 F.2d at 318; *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 373 (D.N.J. 1987). This is even more true when a plaintiff's entitlement to recover compensatory and punitive damages for acts of intentional discrimination is considered. Compensatory damages are by their very nature individualized damages which are designed to compensate the individual for the injury sustained by him or her, and nothing more. Individualized proof will be required before compensatory and punitive damages will be awarded to a plaintiff. Proof of discriminatory hiring or promotion policies for purposes of injunctive relief is different from the proof required for compensatory and punitive damages. In order to recover damages, each plaintiffs will have to show that he or she was personally affected by the discriminatory conduct. Plaintiffs must show not only that they were qualified for the position at issue but also that such a position was actually available to him or her. The fact that the plaintiffs worked in different areas of the plant and for different unions will require proof of the circumstances surrounding each plaintiff's employment and opportunities for advancement.

Additionally, this court finds that the need for individualized determinations of the claims for monetary damages lessens the cohesiveness and homogeneity of the class. This causes the court to be concerned about the interests of unnamed parties who would be bound by a decision which may not adequately address their individual claims. *Santiago*, 72 F.R.D. at 628. Further, the issues surrounding the claim for injunctive relief and the claim for monetary damages are not common. The claim for injunctive relief requires the plaintiffs to show that there are policies and procedures which have a disparate impact on black employees and applicants while the claim for monetary damages requires each plaintiff to show that he or she was actually adversely affected by the policies and procedures in place. Again, it will be necessary for the parties to present individualized evidence and separate hearings would be necessary to deal with this evidence.

In light of the foregoing discussion, this court finds that monetary damages is the predominant type of relief sought. Accordingly, this court finds that class certification under Rule 23(b)(2) is not appropriate.

■ Before this court concludes its analysis of the certification issue, the court must also consider whether this action should be certified under Rule 23(b)(3). Rule 23(b)(3) provides for certification of a class action when:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for a fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interests of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

In considering certification under this subsection, it is proper for the court to consider whether common issues predominate over individual issues. Additionally the court may consider manageability and judicial economy when determining whether a class should be certified under Rule 23(b)(3). *Forbush v. J.C. Penney Co., Inc.,* 994 F.2d at 1104–05. In essence, "common questions must predominate over any questions that affect individual parties, and the class device must be superior to all other available methods for the fair and efficient adjudication of the dispute." *Holmes v. Continental Can, Co.,* 706 F.2d 1144, 1156 (11th Cir.1983).

■ This court finds that while there are common employment policies and procedures for hiring and promotion which allegedly affect all persons seeking employment and those employees seeking advancement, there are several aspects of this case which require individual determinations. The plaintiffs work in different areas of Citgo's facilities, and each plaintiff's opportunities for advancement are determined by the particular circumstances surrounding his or her employment. This action involves claims of disparate impact and disparate treatment. While statistical evidence which is common to all parties may be used to prove certain aspects of plaintiffs' claims, this case also presents a need for individualized evidence regarding each plaintiff's particular circumstances and his or her own allegations of discrimination. Since this court has concluded that the claims for monetary damages which require individual inquiries form a predominant portion of this lawsuit, this court also concludes that individual questions predominate over questions common to the class as a whole.

Further, this court has serious reservations about the manageability of this matter as a class action. As stated above, the new provisions of the Civil Rights Act of 1991 allow for a trial by jury and individualized monetary damage awards. As noted by a commentator:

> The availability of jury trials and individualized determinations of money damages may work to the disadvantage of certain plaintiffs by making class action suits impracticable for intentional discrimination claims. . . .
>
> Under the old regime of bench trials and equitable relief only, courts generally proceeded with class action pattern-or-practice suits by bifurcating the proceedings into a joint liability phase and individual determinations of equitable relief. Under the new system, either party may demand a jury trial. Employers may argue [as Citgo has] that they have a Seventh Amendment right to have the same jury determine liability and damages. In large class action suits alleging intentional discrimination, this may be impracticable; no jury will be asked to sit long enough to determine individual damages for scores or even hundreds of plaintiffs. Moreover, even if separate juries are available in the damages phase, the court would have to supervise a very large number of individual jury trials.

David A. Cathcart & Mark Synderman, *Employment and Labor Law, The Civil Rights Act of 1991,* C983 ALI–ABA 189, 215 (1995).

This court agrees with the observations made in this article that class action jury

trials are not the most efficient manner of handling suits alleging intentional discrimination. The practical considerations of having one jury sit long enough to adjudicate all of the claims of the putative class action weighs heavily against the certification of a class action.[3] By allowing the claims of the individual plaintiffs to proceed as separate actions, this court finds that this case will be more manageable. The claims involved in this litigation are complex. Many of the claims are made under the new provisions of the Civil Rights Act of 1991 which makes some, but not all, issues triable by a jury and provides limited compensatory and punitive damages for some, but not all, claims. Further, the issues of liability and damages will require individualized testimony especially with respect to the claims for disparate treatment and hostile work environment. The complexities of this litigation can best be handled on a case by case basis.

The court has also considered the possibilities of bifurcating the trial into liability and damages stages or of certifying only the claims for injunctive relief. However, this court does not see that these options would substantially increase the manageability or efficiency of handling this matter as a class action. *See Walsh v. Ford Motor Co.*, 130 F.R.D. at 275–76. If the court were to certify the injunctive claims as a class action wherein the pattern or practice claims would be tried to a jury and the disparate impact claims would be tried to the judge, the pattern or practice claims would also have to be relitigated in each plaintiff's disparate treatment and damages case if the parties' assertion that they are entitled to have the same jury determine liability and damages is true. Further, while one benefit of class certifica-

tion is that all potential class members are usually precluded from relitigating the claims, this would not necessarily be the case in this instance. Class certification under Rule 23(b)(3), and possibly even under Rule 23(b)(2) where the claim for monetary damages forms a substantial portion of the relief sought, would require the court to give notice and an opportunity to opt out of the class to all potential plaintiffs. This would allow some plaintiffs to opt out of the class and force the defendant to relitigate the issues previously decided in the class action. Thus this court finds that the complexities of this class action are not eliminated by the bifurcation of the action. Further, the plaintiffs have failed to present the court with a practical plan for handling this action as a class action despite the request from the court to do so. Other than a generalized claim that bifurcating the trial into liability and damage stages would be helpful, the plaintiffs have offered no specific methods for handling the various issues and theories alleged in this action.

■■■■■ Although the court finds that class certification is not the most efficient manner for handling this action, in some instances, it may be appropriate to consolidate cases with similar facts and issues under Fed.R.Civ.P. Rule 42[4]. However it will be necessary for the unnamed putative class members to file their own lawsuits rather than intervene in the present action. Intervention under Rule 24(b) is permissible if the court finds that such intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. The Supreme Court has noted that it is within the court's discretion to conclude that undue de-

---

3. Although this court does not decide the question of whether the parties have the right to have one jury decide all of the issues in this case, both the plaintiffs and the defendant seem to imply that this is the case. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931) (where question of liability and damages are so interwoven that they cannot be submitted to a jury independent of one another without confusion, these issues cannot be tried to different juries).

4. The primary purpose of a class action is to conserve resources and provide for economical

litigation. *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 154, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982); *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 471 (5th Cir.1986). It does this primarily by combining legally and factually similar actions into one suit. This avoids unnecessary duplication and inconsistency. These goals will be equally well served in this case by the use of Fed.R.Civ.P. Rule 42 by which the court can consolidate the cases for a single trial on common issues. *In Re Fibreboard Corp.*, 893 F.2d 706 (5th Cir.1990).

lay and prejudice will result if many putative class members are allowed to intervene as plaintiffs following a denial of class certification. *Crown, Cork, & Seal Co., Inc. v. Parker,* 462 U.S. 345, 350 n. 4, 103 S.Ct. 2392, 2396 n. 4, 76 L.Ed.2d 628 (1983). After considering the possible methods of handling this case, this court finds that allowing the intervention of the numerous unnamed putative class members in this particular action will not serve the interests of justice. The interests of the putative class members with timely claims can be preserved by their filing a legal action on their own behalf. The filing of the present action has tolled the statute of limitations which remains tolled until class certification is denied. *Crown, Cork, & Seal,* 462 U.S. at 351-53, 103 S.Ct. at 2397-98. Therefore, once the district issues a final ruling on the issue of class certification any party wishing to file a suit against the defendant will have to do so with the time remaining on the statute of limitations.

### Earl Lemell's EEOC Charge

The court has previously established the earliest dates for viable claims as being: April 29, 1992 [5] for Title VII claims; May 21, 1992 for claims brought under 42 U.S.C. § 1981; and July 8, 1992 for claims brought under La.R.S. 23:1006. The court determined the cut-off dates for the Title VII claims by reference to the earliest EEOC charge relied upon by the plaintiffs. In doing so, the court relied upon Charlet McCain's EEOC charge which was filed on October 29, 1992.

The plaintiffs now propose an earlier date for viable Title VII claims based on the EEOC charge of Mr. Earl Lemell which was filed in 1987. They contend that the 90 day period within which he was required to file suit was tolled by the fact that he never received the right to sue letter issued by the EEOC on September 21, 1988. Plaintiffs argue that when a claimant fails to receive a right to sue letter, through no fault of his own, the time for filing a suit is tolled. Thus,

plaintiffs argue that Lemell's 1987 EEOC charge is timely and that it should serve as the reference point for determining the opening date for Title VII class claims. Evidence on this issue was presented at the class certification hearing held on May 30, 1995.

The Fifth Circuit has held that giving notice to the claimant at the address designated by him suffices to start the 90 day period unless the claimant, through no fault of his own, failed to receive the right to sue letter. *Espinoza v. Missouri Pacific Railroad Co.,* 754 F.2d 1247, 1250 (5th Cir.1985); *Franks v. Bowman Transportation Co.,* 495 F.2d 398, 405 (5th Cir.1974), reversed on other grounds 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). Therefore, the 90 day period on Lemell's EEOC charge started to run on or about September 21, 1988, the date the right to sue letter was issued, unless he can prove that he failed to receive the right to sue letter through no fault of his own. Lemell contends that he did not receive the right to sue letter which was issued on September 21, 1998. In support of his contention, he claims that he questioned his wife about whether she received the letter and checked his records at home but failed to turn up any evidence that he received the right to sue letter. However, this court finds that Lemell's assertions regarding his claim that he did not receive the right to sue letter are not credible. Lemell's testimony at the class certification hearing was inconsistent with his deposition testimony wherein he stated that he was not sure if he received the right to sue letter which was issued on September 21, 1988. Further, in response to a question from this court requiring all of the plaintiffs to state the EEOC charges upon which they were relying, Lemell signed an affidavit which indicated that he was relying on the EEOC charges of Victor Washington, Dwayne Prudhomme, and Charlet McCain. His affidavit did not mention his 1987 EEOC charge. This indicates to the undersigned that Mr. Lemell did not have a belief at that time that his EEOC charge was still pending. Additionally, Mr. Lemell's testimony at the

---

5. The defendants argue that this date should be May 1, 1992 for the Title VII claims because although Charlet McCain's EEOC charge was signed and dated October 26, 1992, it was not filed until October 29, 1992. Thus, they contend that 180 days prior to October 29, 1992, the filing date, is May 1, 1992.

class certification hearing revealed that he bid back into the utility pool in September, 1988. This decision to bid back into the utility pool from his operator position took him out of competition for temporary upgrades to a foreman position and also made him ineligible for PCC training, both of which were the source of his EEOC charge. A decision by Mr. Lemell to take action which would moot his EEOC charge seems more likely to be made after learning of the EEOC's findings with respect to his claim. Finally, Lemell admitted at the hearing that the right to sue letter was addressed to the proper address. There is a presumption that mail is received by the addressee when it is properly addressed and the proper postage is affixed to the letter. *Cook v. Providence Hospital,* 820 F.2d 176, 179 n. 3 (6th Cir. 1987); *see also Mulder v. Commissioner of Internal Revenue Service,* 855 F.2d 208, 212 (5th Cir.1988); *McPartlin v. Commissioner of Internal Revenue Service,* 653 F.2d 1185, 1191 (7th Cir.1981). This court is not persuaded that Mr. Lemell has overcome this presumption, especially in light of the facts and findings of this court as recounted above. Therefore, the court will continue to use the previously established dates for determining who has a potentially viable claim and will not consider the EEOC charge filed by Mr. Lemell for this purpose.

Finally, the plaintiffs contend that they should be allowed to bring claims for alleged acts of discrimination which occurred between April 11, 1979 and the present under the continuing violation theory. The court has also previously addressed the continuing violation theory and its application to the claims in this case. In doing so, the court concluded that persons having timely claims are allowed, under the continuing violation theory, to bring claims for acts of discrimination which occurred prior to the cut-off dates. Therefore, those plaintiffs who can establish a timely claim of discrimination are entitled to also bring an action for claims which would otherwise be time-barred. However, the continuing violation theory does not afford the plaintiffs a general right to bring claims which pre-date the cut-off dates.

*Conclusion*

This court finds that this action is not certifiable under Rule 23(b)(2) because the claim for monetary damages is the predominant form of relief sought. This court also finds that this action is not certifiable under Rule 23(b)(3) because common issues of law and fact do not predominant and because a class action is not the most efficient manner of handling these lawsuits. Plaintiffs have demanded a jury trial under the amendments to the 1991 Civil Rights Act. They also seek compensatory and punitive damages under these amended provisions. It is impractical to expect one jury to sit long enough to determine liability and individual damage awards for a class the size of that which plaintiffs seek to certify. This court finds that it would be more efficient and manageable for this court to consolidate certain individual actions for trial than to proceed with this as a class action.

Further, this court finds that the EEOC charge filed by Mr. Earl Lemell in 1987 has no effect on this proceeding.

ACCORDINGLY,

IT IS RECOMMENDED that the "Motion to Determine Propriety of and Define Class" be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS ON APPEAL.**

THUS DONE AND SIGNED.