Neida SANTIAGO et al.

v.

CITY OF PHILADELPHIA et al.

Civ. A. No. 74–2589.

United States District Court,
E. D. Pennsylvania.

Nov. 24, 1976.

Jonathan M. Stein, Ellen Josephson, Community Legal Services, Inc., Jack J. Levine, Philadelphia, Pa., for plaintiffs.

Sheldon L. Albert, City Sol., Joseph R. Lally, Agostino Cammisa, Saul L. Langsam, Asst. City Sols., Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

This is a civil rights action brought by seventeen juveniles, on behalf of themselves and others similarly situated, challenging the conditions of confinement and treatment at the Youth Study Center ("YSC"), Philadelphia, Pennsylvania, and seeking injunctive and declaratory relief and damages. Plaintiffs have moved for class action certification. We grant their motion as it applies to injunctive and declaratory relief.

The plaintiffs, all of whom have been confined at YSC, initiated this action in October, 1974 and have filed two amended complaints. Their motion for class certification, filed in January, 1975, has been delayed because of a hearing on a preliminary injunction and lengthy settlement negotiations. Plaintiffs' allegations of constitutional deprivations and state statutory violations can be divided into six categories: (1) unconstitutional corporal punishment and solitary confinement; (2) conditions of confinement which violate constitutional and statutory standards (*e.g.*, inadequate heat, lighting, living space); (3) improper institutional restraints and suppression of liberties (mail, visitation, recreation, medi-

cal care, etc.); (4) denial of adequate educational and rehabilitative services; (5) racial segregation at YSC resulting from discriminatory placement of juveniles; and (6) failure to utilize the least restrictive alternative in confining juveniles. Plaintiffs maintain that these practices are actionable under 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1988, 1994 and 2000d; the First, Fourth, Fifth, Eighth, Thirteenth and Fourteenth Amendments of the United States Constitution; and the statutory and common law of the Commonwealth of Pennsylvania. Named as defendants are several city officials, judges of the Family Court Division of the Philadelphia Court of Common Pleas, administrators and personnel of YSC and officials of the Philadelphia School District and State Department of Education. The state and city officials and YSC administrators are included as defendants because the plaintiffs assert that these individuals were aware, or should have been aware, of the conditions and practices at YSC and thus acquiesced in the alleged constitutional and/or statutory violations.

Plaintiffs seek certification under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure. They request that there be one class, consisting of all juveniles who are or will be incarcerated at YSC, and two subclasses, consisting of (1) all non-white juveniles and (2) all non-adjudicated delinquent juveniles, who are or will be incarcerated at YSC.

On behalf of the class, plaintiffs request injunctive and declaratory relief, asking the court, *inter alia,* to declare that the aforementioned policies and practices violate federal and state law, to devise a plan eliminating these conditions while YSC remains operational, and to order the facility closed after a phased transition period. The named plaintiffs individually seek compensatory and punitive damages. The second amended complaint also requests "such further relief as is necessary and appropriate." Apparently, as part of this "further relief," the motion for certification claims damages for the class resulting from the conditions and practices at YSC.

## I

Before addressing the specific requirements of Rule 23, we must first consider whether the class action is presently moot.[1] It appears that none of the named plaintiffs currently resides at YSC; thus, their individual claims for injunctive relief are moot. Defendants contend that the class action becomes moot when all of the named plaintiffs' claims are moot. We reject this argument. Since the average stay at YSC is less than two weeks for all resident youths,[2] it would be impossible for any individual's claim not to become moot during litigation of this action. Where a claim is "capable of repetition, yet evad[es] review," there is a well-established exception to the general mootness requirement. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Normally the plaintiff's claim must remain nonmoot throughout the entire litigation in order for there to be a live case and controversy. But in *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Court held that, in class actions where a claim may "evade review," the case is not moot if the named plaintiff has a case or controversy at the time the complaint is filed and at the time the class action is certified. The Court suggested that there may be circumstances under which the latter time requirement can be excused.

In *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), a class action by pre-trial detainees challenging the denial of a probable cause hearing, the Court held that the case and controversy requirement was satisfied even though the named plain-

---

1. This is the only issue raised by defendants' motion to dismiss which we will currently resolve.

2. In a study of status offenders at YSC, it was found that the average time of detention for all youths held at YSC in 1975 was 8.5 days. The report stated that the YSC administration was the source of this figure. The Juvenile Justice Center of Pennsylvania, *The Status Offender: Characteristics and Considerations For Alternatives to Detention and Treatment* 84 (1976).

tiff's claim was moot at the time of class certification. Justifying this holding, the Court noted:

> "The length of pretrial custody cannot be ascertained at the outset, and it may be ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial. It is by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class. Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain. The attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Id.* at 110 n.11, 95 S.Ct. at 861 n.11, 43 L.Ed.2d at 63 n.11.

Certification is said to "relate back" to the time of filing under these circumstances.

■ We find that factors similar to those discussed in *Gerstein* are present in this action and, therefore, mootness of the named plaintiffs at the time of certification is excused. *See McGill v. Parsons,* 532 F.2d 484, 488 (5th Cir. 1976); *Inmates of San Diego County Jail v. Duffy,* 528 F.2d 954, 956–57 (9th Cir. 1975); *Jones v. Diamond,* 519 F.2d 1090, 1093 (9th Cir. 1975); *Conover v. Montemuro,* 477 F.2d 1073, 1081–82 (3d Cir. 1973). YSC inmates generally have very short terms of confinement, similar to the plaintiffs in *Gerstein,* and the class is continuously being augmented by new residents who are allegedly suffering the same constitutional and statutory deprivations. It is clear from the complaint that at least one named plaintiff for the class and each subclass was confined at YSC at the time the complaint was filed. This action, therefore, meets the case and controversy requirement.

## II

In order for this case to be certified as a class action, plaintiffs must satisfy the four prerequisites of Fed.R.Civ.P. 23(a) and one of the conditions of 23(b). Subsection 23(a) requires that the class representatives demonstrate: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). All these requirements are met in this action.

■ The numerosity prerequisite is satisfied as long as the class representatives can show impracticability of joinder, even if the exact size of the class is unknown. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1762 at 595 (1972); *Agostine v. Sidcon Corp.,* 69 F.R.D. 437 (E.D.Pa. 1975). The population of YSC apparently exceeds one hundred and because of the short stay of any one resident there is a constant influx of new juveniles into the Center. This rotation of youths into the class makes joinder impracticable and emphasizes the desirability of class action as a tool for litigating the issues raised in this suit. The same rationale applies to the two subclasses.

■ The commonality requirement of 23(a)(2) has been met for the proposed class and each subclass. It is not necessary under this subsection that common questions predominate, only that they exist. *Sommers v. Abraham Lincoln Fed. Savings & Loan Ass'n,* 66 F.R.D. 581 (E.D.Pa. 1975). Factual issues applicable to the entire class include, *inter alia,* the conditions of confinement, availability of educational and rehabilitative services, and the acquiescence of city and state officials and YSC administrators in these practices and policies. The constitutional and/or statutory standards applicable to the aforementioned conditions present legal questions common to the class. The subclass of nonwhite residents is appropriate for litigating the common factual questions about the policies and practices controlling placement of youths into YSC which have resulted in the alleged racial segregation of this subclass. Additionally, the subclass of non-adjudicated delinquent

youths is required because of the possibility that separate and distinguishable constitutional and/or statutory standards could apply to this group of YSC residents.

Subsection 23(a)(3) requires that the class representatives' claims typify those of the class. Although there is some dispute as to the exact meaning of this subsection, its requirements are met if the claims of the class representatives and members are based on the same legal theory. 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1764 at 90 (Supp. 1975). In this action, the same legal theories apply to the named plaintiffs and to current and future residents. This is supported by the allegation that the class representatives and members have suffered the same types of injuries as a result of policies and practices at YSC. There is a close nexus between the factual questions raised by the representatives and those of other class members which pertain to the administration of, and conditions at, YSC. We reject defendants' argument that the nature of the remedy (*i.e.,* damages) for the class representatives disqualifies them from pursuing different relief for the class.[3] As long as the representatives, in the course of litigation, fairly present the claims of the other members, subsection 23(a)(3) has been satisfied. *Sommers v. Abraham Lincoln Fed. Savings & Loan Ass'n, supra* at 586–87; 7 C. Wright & A. Miller, *supra* § 1764 at 91 (Supp. 1975).

Adequacy of representation, described in subsection 23(a)(4), requires the consideration of two factors: (1) whether plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation; and (2) whether the named plaintiffs' interests are antagonistic to other members of the class. *Wetzel v. Liberty Mutual Insur. Co.,* 508 F.2d 239, 247 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). We find that plaintiffs' counsel are experienced in this field of litigation and have demonstrated their ability to pursue this action vigorous-

ly. Defendants question, though, whether the named plaintiffs can adequately represent the claims of current and future residents. They argue that the plaintiffs' pecuniary interests are antagonistic to claims for injunctive relief; thus, the representatives must be disqualified under this subsection. In *Wetzel,* the Third Circuit held that former employees who were ineligible for injunctive relief could represent present and future employees in a claim for such relief. Similarly, in *Conover v. Montemuro,* 477 F.2d 1073, 1082 (3d Cir. 1973), the court found that past juvenile detainees who had completed their juvenile court proceedings could still adequately represent a class which challenged the intake procedure of state juvenile courts and sought injunctive relief. These decisions demonstrate that a named plaintiff can represent a class even though he seeks different relief than the class. Instead, the courts have focused on whether there are potential conflicts between the class representatives and the unnamed members of the class. In this action we find no such antagonism; a finding in favor of the named plaintiffs for damages could only support the class claims for injunctive relief. These representatives have a strong interest in pursuing injunctive relief, both because of their individual damage claims and because of the possibility that they may again be confined at YSC. We find the named plaintiffs to be adequate class representatives.

### III

In addition to satisfying the prerequisites of 23(a) the plaintiffs must also demonstrate that one of the conditions of 23(b) has been met. Plaintiffs have requested that we certify the class under 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole * * *." Fed.R.Civ.P. 23(b)(2). This

---

**3.** Defendants also raise this argument under 23(a)(4) concerning the adequacy of represen-
tation. We discuss their contention more fully under that subsection.

subsection has been liberally applied in the area of civil rights, including suits challenging conditions and practices at various detention facilities. *See, e.g., Martinez Rodriquez v. Jimenez,* 409 F.Supp. 582 (D.P.Rico 1976); *Woe v. Mathews,* 408 F.Supp. 419 (E.D.N.Y. 1976); *Pugh v. Locke,* 406 F.Supp. 318 (M.D.Ala. 1976); *King v. Carey,* 405 F.Supp. 41 (W.D.N.Y. 1975). It is met even if the action or inaction "has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class." *Advisory Committee's Notes to Proposed Rules of Civil Procedure,* 39 F.R.D. 69, 102 (1966).

It would usually be a simple task in this type of action to find that the conditions of 23(b)(2) have been met, but the issue has been substantially complicated by the additional request for damages. We have found it necessary, therefore, to bifurcate our discussion of (b)(2) according to the type of relief requested because the factors relevant to injunctive relief are not necessarily controlling when (b)(2) is expanded to apply to damages.

We find that 23(b)(2) has been satisfied with respect to the claim for injunctive and declaratory relief. The essential consideration is whether the complaint alleges that the plaintiffs have been injured by defendants' conduct which is based on policies and practices applicable to the entire class. The plaintiffs' claims, pertaining to, *inter alia,* the overall conditions at YSC, the policies controlling the administration of educational services and treatment of residents, the criteria for placement of nonwhite juveniles at YSC, and the alleged restraints on individual liberties, sufficiently allege such conduct. In addition, the claim that city and state officials and YSC administrators acquiesced in the alleged constitutional and/or statutory violations support the conclusion that there are policies and practices of the defendants which apply to the entire class. Final injunctive and declaratory relief may be required to terminate these practices and, therefore, we grant 23(b)(2) certification to pursue such relief.

The plaintiffs also seek class damages. Neither the second amended complaint nor the motion for certification is specific in terms of which conditions or practices justify monetary relief and against whom such relief may be sought. Defendants, in response, maintain that damages are barred under all circumstances in a 23(b)(2) class action. We must determine, therefore, whether damages would be appropriate under any claim raised by the complaint. In this type of action, the actual damages for each class member would not be ascertained in the initial suit; only the broader question, whether classwide liability exists, would be litigated. Separate hearings would have to be held to establish the damages of the individual members. After carefully reviewing the applicable law in light of the plaintiffs' claims, we find that 23(b)(2) certification for monetary relief is not possible at this time, but that plaintiffs should be given the opportunity to continue discovery and restructure the class to conform with the requirements discussed below. We, therefore, defer a decision on certification for damages.

The principles which control the application of 23(b)(2) to monetary relief are not well defined. The analysis must start with the Advisory Committee's Notes concerning subsection (b)(2) which state that (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominately to money damages." *Advisory Committee's Notes to Proposed Rules of Civil Procedure,* 39 F.R.D. 69, 102 (1966). This statement has been interpreted to mean that monetary relief is not barred entirely under the subsection. The Third Circuit in *Wetzel v. Liberty Mutual Insur. Co., supra,* held that monetary relief is available to a 23(b)(2) class in a Title VII action alleging sex discrimination. Several other circuits similarly have held that such relief is possible under (b)(2) on the grounds that back pay or other monetary relief in a Title VII action is primarily equitable in nature. *See, e.g., Franks v. Bowman*

*Transp. Co.,* 495 F.2d 398, 422 (5th Cir.), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974), *reh. denied,* 420 U.S. 984, 95 S.Ct. 147, 43 L.Ed.2d 667 (1975); *Arkansas Educational Ass'n v. Board of Education,* 446 F.2d 763, 768 (8th Cir. 1971); *Robinson v. Lorillard Corp.,* 444 F.2d 791, 801–02 (4th Cir. 1971), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1972); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 720–21 (7th Cir. 1969). Other cases which have recognized a (b)(2) class request for monetary relief have included liability issues which were nearly identical to those resolved in the decision to grant injunctive and declaratory relief. *See, e.g., Connor v. Highway Truck Drivers & Helpers,* 68 F.R.D. 370 (E.D.Pa. 1975) (reimbursement of union dues); *Rhodes v. Weinberger,* 66 F.R.D. 601 (E.D.Pa. 1975) (retroactive benefits under Social Security Act); *Samuel v. University of Pittsburgh,* 56 F.R.D. 435 (W.D.Pa. 1972) (restitution of excessive tuition paid by students). In contrast, cases denying the appendage of a damage claim in a (b)(2) class action have found that: (1) the issues relevant to such relief were distinguishable from those associated with injunctive relief; (2) damages would introduce individual issues disruptive to the class action; or (3) the class description was inappropriate for damage relief. *Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905 (9th Cir. 1975); *Rice v. City of Philadelphia,* 66 F.R.D. 17 (E.D.Pa. 1974); *Bogosian v. Gulf Oil Corp.,* 62 F.R.D. 124 (E.D.Pa. 1973).

In *Wetzel,* the Third Circuit emphasized that the essential characteristic of a 23(b)(2) class is that it is "cohesive as to those claims tried in the class action." *Wetzel, supra* at 248–49. This homogeneity requirement is a natural consequence of the (b)(2) condition that the defendant "has acted or refused to act on grounds generally applicable to the class." The court in *Wetzel* also noted that the cohesiveness of the

claims distinguishes a 23(b)(2) class from a 23(b)(3) one.[4] The latter subsection permits litigation of more heterogeneous claims because it provides for class notice and the opportunity for members to opt out of the class if they desire to litigate their claims individually or if they perceive their interests to be antagonistic to those of the class. The court found that the damage claim in *Wetzel* was cohesive and that the class representatives sought "relief with respect to the class as a whole."

█ Several factors may be derived from these decisions and must be considered in determining the appropriateness of a (b)(2) class request for damages. First, the named plaintiffs must demonstrate that there are issues common to both the claims for injunctive relief and those for monetary relief, and that these issues predominate in the action. In particular, it must be shown that the injuries for which damages are sought have been caused by defendants' conduct which is based on policies and practices applicable to the entire class. This requirement is consistent with the rule that the damage claim must be coextensive with, or ancillary to, the claim for injunctive relief, in order that the suit not be one "predominately" for money damages. It is not necessary that the alleged conduct by the defendants result in a decree for injunctive relief after trial on the merits, as long as it appears, at the time of certification, that such conduct is of a type which could result in injunctive or declaratory relief. *Wetzel v. Liberty Mutual Insur. Co., supra* at 250–52.

█ Assuming common questions exist, a second requisite is that litigation of the damage claim must not introduce significant individual liability or defense issues which would require separate hearings for each class member in order to establish defendants' liability. *See Society for Individual Rights, Inc. v. Hampton, supra* at

---

**4.** Rule 23(b)(3) provides that a class action is maintainable if:

"[T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. * * * "

906; *Rice v. City of Philadelphia, supra* at 20. This concern is a direct outgrowth of the homogeneity requirement noted in *Wetzel*. In a (b)(2) class action the court must be especially vigilant in protecting unnamed members of the class who are bound by the action without the opportunity to withdraw. As a result, the court should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it would under subsection 23(b)(3). Otherwise, unnamed members with valid individual claims may be prejudiced by a negative decision on the class action. In addition, if significant individual issues were to arise consistently, the suit could become unmanageable and little value would be gained in proceeding as a class action.

 A third factor to consider is whether the class description is adequate for defining who is eligible for monetary relief. When a damage claim is added, a class designed specifically for injunctive relief may have to be altered to include those who suffered past injuries. The class description might also need amendment or subdivision to assure that the damage claims of all those injured in the class will be adequately presented, or to eliminate those claims which do not meet the cohesiveness requirements discussed previously.

Applying the above criteria to this action, we believe that the representatives have not satisfied the requirements of 23(b)(2) as it applies to damages. We do not conclude that monetary relief in this type of action is per se unobtainable under (b)(2), but we find that the class is inappropriately defined for such relief, and that collateral liability and defense issues, individual to each member, might arise in many of plaintiffs' claims. We conclude that these deficiencies are too substantial to permit the damage claim to proceed, and that any resolution of these problems by the court would be speculative. We recognize that it may be possible, through further discovery, a restructuring of the class and the addition of subclasses, to alleviate the deficiencies; we, therefore, will defer the decision whether the class may seek monetary relief under (b)(2). In light of the certification for injunctive and declaratory relief, deferring certification for damages will not hinder the representatives' progress with this suit.

Despite the damage request, this suit remains primarily one for injunctive and declaratory relief, and the damage claim is ancillary to that relief. We also find that there are issues common to both injunctive and monetary relief. These include, *inter alia,* the policies and practices associated with the maintenance of general institutional conditions, the restraints on individual liberties, the denial of adequate clothing, medical treatment and food, the denial of right to treatment and the alleged racial segregation. Additionally, any acquiescence of higher officials in the aforementioned practices would be an appropriate issue for both types of relief. But recognition of these common issues does not establish that such issues will predominate or that individual questions will not arise.

 Due to the nature of the plaintiffs' claims, we believe that significant issues unrelated to injunctive relief may be encountered in determining who within the class has been injured by defendants' conduct and whether any or all of the defendants are immune from a damage claim. There is also a substantial likelihood that these questions may involve factual issues unique to each member of the class. In damage suits challenging the conditions of institutional confinement, a plaintiff-inmate usually cannot establish an injury solely on the basis of defendants' conduct. The courts have uniformly recognized that detention center administrators must be granted extensive discretion in determining treatment for inmates entrusted to their care. *Gray v. Creamer,* 465 F.2d 179, 183 (3d Cir. 1972). As a result, any denial of treatment or use of excessive force or restraints must be analyzed in light of the particular inmate's needs and behavior. Without this factual background, the court usually cannot determine whether any constitutional violation has occurred. For example, the denial of medical care justifies

damage relief only when the inmate can establish that treatment for his ailment or injury was deliberately denied. *See, e.g., Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3d Cir. 1970); *Newsome v. Sielaff,* 375 F.Supp. 1189, 1193 (E.D.Pa. 1974); *United States ex rel. Ingram v. Montgomery County Prison Bd.,* 369 F.Supp. 873, 874 (E.D.Pa. 1974). Similarly, excessive use of solitary confinement can only be judged in light of the plaintiff's behavior which precipitated such sanction. *See, e.g., United States ex rel. Tyrrell v. Speaker,* 471 F.2d 1197 (3d Cir. 1973); *Thompson v. Montemuro,* 383 F.Supp. 1200 (E.D.Pa. 1974). We also believe that individual questions will arise in litigating the suppression of other liberties alleged in the complaint. If the class members have to establish their injury individually, a 23(b)(2) action is not appropriate.

Significant issues also may be encountered in determining the defendants' immunity from damages. As the Supreme Court stated in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), official immunity must be analyzed in light of "the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based." *Id.* at 247, 94 S.Ct. at 1692, 40 L.Ed.2d at 103. We anticipate that individual questions, concerning each defendant's knowledge of and responsibility for the particular treatment of each YSC resident, may arise.

We do not now decide that liability and immunity questions for every claim are too individualized for (b)(2) class treatment; but the misgivings discussed above justify withholding certification until the class representatives can demonstrate that classwide injury and defendants' immunity can be decided without the substantial intrusion of individual questions.

We believe that the proposed class description is not one for which damage relief would be appropriate. Future residents are not eligible for monetary relief. The group of "current" residents is not a well-defined entity, because of the constant rotation of youths into YSC. It would appear that damages would only apply to a group of past residents limited by the statute of limitations and by the time period for which factual allegations are presented.

In summary, we find that there are sufficient questions about the cohesiveness of the damage claim to justify our decision to defer certification. But we conclude that plaintiffs should be permitted an opportunity to continue discovery and amend or subdivide the class under Rule 23(c)(4), to meet the requirements described previously. If the cohesiveness mandated by 23(b)(2) cannot be established, it is possible that a 23(b)(3) class action might be pursued for certain issues, or that past residents may intervene to litigate their damage claims individually.

In conformity with the views expressed above, we find that this suit may proceed as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2) for issues relating to injunctive and declaratory relief. The class and two subclasses shall consist of:

All juvenile citizens who are or will become subject to incarceration at the Youth Study Center, Philadelphia, Pennsylvania; and

(a) All non-white juvenile citizens who are or will become subject to incarceration at the Youth Study Center; and

(b) All non-adjudicated delinquent juvenile citizens who are or will become subject to incarceration at the Youth Study Center.