808 A.2d 159 (2002)
354 N.J. Super. 519
Rene GOASDONE, Plaintiff,
v.
AMERICAN CYANAMID CORP., Defendants.
Superior Court of New Jersey, Law Division.
June 7, 2002.
*162 Alfred M. Anthony, Woodbridge, for plaintiff (Wilentz, Goldman & Spitzer, attorneys).
Thomas J. Lamb, pro hac vice, Wilmington, NC, for plaintiff (Law Offices of Thomas J. Lamb, attorneys).
Joel Schneider, Haddonfield, for defendant Clariant Corporation, (Archer & Greiner, attorneys).
Rosemary J. Bruno, Steven J. Santarsiero, for defendants American Cyanamid Company, E.I. du Pont de Nemours & *163 Company, (Raclaur, L.L.C., attorneys) (Klett, Rooney, Lieber & Schorling, P.C., attorneys).
David W. Field, for defendant Ciba Speciality Chemicals Corp. (Lowenstein, Sandler, attorneys). *160
*161 CHAMBERS, P.J.S.C.
The motion before the court seeks certification of a medical monitoring class consisting of workers exposed to benzidine related dyes[1] during their employment at the Allied Textile Printers (later known as ATP Processors) plant in Paterson, New Jersey (hereinafter ATP). The motion is denied for the reasons set forth below.
Plaintiff, Rene Goasdone, worked at ATP from 1959 to 1982. His work as a colorist, color mixer, and rotary department supervisor caused him to work in many areas of the textile plant. The benzidine related dyes used at ATP were generally delivered to the plant in powdered form and eventually were used to create liquid dyes. Due to the dust generated during this process as well as the presence of liquid dyes, plaintiff contends that he and his fellow workers were harmfully exposed to the benzidine related dyes by way of inhalation, dermal absorption, and ingestion.
The defendants in this case are five companies whose benzidine related products have been identified as being used at ATP. The defendants are among more than twenty companies that once manufactured, distributed or sold benzidine related dyes. By the end of 1972, each defendant (or its predecessor) had stopped manufacturing benzidine related dyes.
Benzidine related dyes are known carcinogens and are associated with an increased risk of bladder cancer in workers occupationally exposed to the dyes. Plaintiff's expert has opined that a worker at ATP who was exposed to benzidine related dyes is at an increased risk of developing disease, including bladder cancer, and would benefit from a medical monitoring program designed to enhance the early detection of bladder cancer. According to plaintiff's expert, the period of latency from initial exposure to the onset of bladder cancer can be anywhere from five to fifty years. Early detection of bladder cancer is beneficial, since it allows for early surgical intervention. As a result, the medical practice, as described by plaintiff's expert, is an ongoing medical monitoring program for workers who have been exposed to bladder carcinogens.
Accordingly, plaintiff has brought this lawsuit in order to establish a medical monitoring program for all of the people who worked at ATP in order to provide early detection and early treatment of any bladder cancer which may develop. Plaintiff seeks certification of a class consisting of all of the people who worked at ATP for a period of thirty days or more from 1946 when the plant opened until 1983 when the plant closed, a period of thirty-seven years. Anyone previously diagnosed with a disease related to exposure to the dyes would be excluded from the class.
Defendants question the efficacy of the proposed class action noting that the manufacture of benzidine related dyes ended thirty years ago in 1972; the ATP plant closed almost twenty years ago in 1983; after four years of litigation, plaintiff has been able to identify and locate only a *164 small handful of employees due to the absence of ATP records; presumably many class members have died or moved from the area; and many class members may have already benefitted from the medical program offered by their union. In addition, since New Jersey law permits workers compensation courts to order medical monitoring on behalf of a worker, the workers compensation system offers an alternate avenue for relief. See Taylor v. State of New Jersey, 91 N.J.A.R.2d 21, 1990 WL 456757 (Workers Comp.1990).
The class certification procedure is designed to further the efficient administration of justice, to "save time and money for the parties and the public and to promote consistent decisions for people with similar claims." In re Cadillac V8-6-4 Class Action, 93 N.J. 412, 430, 461 A.2d 736 (1983). Class certification enables litigants with uneconomical causes of actions to band together and to remedy wrongs that otherwise may not be addressed. Id. at 423-24, 461 A.2d 736. Rule 4:32-1 governs class actions in New Jersey. The class action rule should be liberally construed and certification should be granted unless a "clear showing" is made that certification is "inappropriate or improper." Delgozzo v. Kenny, 266 N.J.Super. 169, 179, 628 A.2d 1080 (App.Div.1993). Nonetheless, the burden of establishing class status is on the plaintiff, and the court must undertake a "rigorous analysis" to ascertain whether the requirements for certification have been met. Carroll v. Cellco Partnership, 313 N.J.Super. 488, 494-95, 713 A.2d 509 (App.Div.1998).
When deciding certification, the court must not make a preliminary decision on the merits of the claim. Delgozzo v. Kenny, supra, 266 N.J.Super. at 180-81, 628 A.2d 1080. However, some preliminary analysis is required since an understanding of the claims, defenses, relevant facts and substantive law is necessary in order to decide the certification issues. Carroll v. Cellco Partnership, supra, 313 N.J.Super. at 495, 713 A.2d 509.
Rule 4:32-1(a) sets forth four prerequisites that must be met in order to maintain a class action, namely (1) numerositythe class is so numerous that joinder of all members is impracticable; (2) commonalitythe existence of questions of law and fact common to the class; (3) typicalitythe claims or defenses of the class representatives are typical of the class; and (4) adequacy of representationthe class representatives will fairly and adequately protect the interests of the class. Once the four prerequisites are met, the plaintiff then must show that one of the alternative requirements under Rule 4-32-1(b) for maintaining a class action has been met. In this case, plaintiffs maintain that they meet the requirements under Rule 4:32-1(b)(2), (hereinafter (b)(2)) or, in the alternative, under Rule 4:32-1(b)(3) (hereinafter (b)(3)).
The New Jersey class action Rule 4:32-1 is modeled after Rule 23 of the Federal Rules of Civil Procedure. In re Cadillac, supra, 93 N.J. at 424-25, 461 A.2d 736. Since New Jersey has no reported decision on certification of a medical monitoring class, federal case law lends important guidance.
The proposed class meets the four prerequisites under Rule 4:32-1(a) necessary for class action certification, namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation, for the reasons discussed below.
The first prerequisite is numerosity, namely that the class is "so numerous that joinder of all members is impracticable." R. 4:32-1(a)(1). Here plaintiffs are seeking to certify as a class all of the individuals who worked at the ATP facility *165 in Paterson, New Jersey for at least 30 days at any time from 1946 through 1983 when the plant closed. Plaintiffs have testified that anywhere from 200 to 600 people worked in the plant at any one time. Plaintiffs' expert, a labor economist, has submitted a report which estimates that about 5,074 people worked in the plant during this time period and approximately 1,065 can be expected to be under 65 years old. The number of projected class members in this case meets the requirement of numerosity.
The second prerequisite is commonality, namely the presence of "questions of law or fact common to the class." R. 4:32-1(a)(2). All of the factual and legal questions in the case need not be identical for all of the proposed class members. Herbert B. Newberg and Alba Conte, Newberg on Class Actions, § 3.10, p. 3-48 to 3-49 (1992 3d ed.). A single common question will satisfy this requirement. Baby Neal v. Casey, 43 F.3d 48, 56 (3d Cir.1994). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." Ibid. The threshold for commonality is relatively low (although it presents a higher barrier in personal injury damage class actions). Barnes v. The American Tobacco Company, 161 F.3d 127, 140-141 n. 15. (3d Cir.1998), cert. denied 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999).
As noted by plaintiff, questions common to claims of all class members in this case include whether defendants placed benzidine related dyes in the stream of commerce; whether defendants knew or had reason to know that the benzidine related dyes might present potential health risks to workers exposed to their dyes; whether any warnings by defendants were adequate; whether exposure to the benzidine related dyes places workers at an increased risk of developing disease, including bladder cancer; and whether defendants controlled industry standards and public knowledge on the health risks of exposure to the dyes. The existence of these common questions are sufficient to meet the requirement of commonality.
The third prerequisite is typicality, namely that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." R. 4:32-1(a)(3). While commonality focuses on the characteristics of the proposed class, typicality focuses on the proposed class representative. 1 Newberg and Conte, supra, at § 3.13, p. 3-71 to 3-72. Typicality requires that the claims of the class representatives must "have the essential characteristics common to the claims of the class." In re Cadillac, supra, 93 N.J. at 425, 461 A.2d 736 (quoting 3B Moore's Federal Practice No. 23.06-2 (1982)). Typicality does not require that claims of all of the class members be identical to that of the class representatives. Baby Neal v. Casey, supra, 43 F.3d at 56. Factual differences will not necessarily defeat class certification. Ibid.
To meet the requirement of typicality, the claims of the class members and class representatives must arise from the same event or practice or course of conduct and must be based on the same legal theory. Ibid. The expectation is a harmony of interest between the class action representatives and the class members, so that the class representatives by furthering their own goals are also furthering the goals of the class. 1 Newberg and Conte, supra, § 3.13 at p. 3-74 to 3-75. Typicality is intended "to screen out class actions involving legal or factual positions of the class representative which are markedly different from those of other class members." *166 Reilly v. Gould, Inc., 965 F.Supp. 588, 600 (M.D.Pa.1997) (quoting from Liberty Lincoln Mercury v. Ford Marketing, 149 F.R.D. 65, 77 (D.N.J.1993)).
In this case, the class representative's claim for medical monitoring is typical of the proposed class members' claims in that they all worked in the ATP plant in Paterson and all allegedly were exposed to benzidine related dyes and thereby are subject to an increased risk of bladder cancer. The legal theories to support the claims of the class representative and class members for medical monitoring are the same. However, as described below when discussing cohesiveness and predominance, factual differences do abound. Nonetheless, as noted above, those differences will not defeat typicality. Accordingly, the requirement of typicality has been met.
The fourth prerequisite is adequacy of representation, namely that "the representative parties will fairly and adequately protect the interests of the class." R. 4:32-1(a)(4). This requirement is met if (1) plaintiff's attorney is "qualified, experienced, and generally able to conduct the proposed litigation," and (2) plaintiff's interests are not antagonistic to those of class members. Delgozzo v. Kenny, supra, 266 N.J.Super. at 188, 628 A.2d 1080.
The adequacy of plaintiff's counsel has been unchallenged. The plaintiff's attorneys are experienced in handling class actions, toxic tort cases, and medical monitoring litigation. In addition, nothing in the record indicates that plaintiff has an interest antagonistic to any class member. Accordingly, this fourth requirement has been met.
Plaintiffs have moved for class action certification under R. 4:32-1(b)(2) (hereinafter (b)(2)) or in the alternative, under R. 4:32-1(b)(3) (hereinafter (b)(3)). The (b)(2) application will be discussed first.
Class certification under (b)(2) may be granted where the four prerequisites are met and "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." R. 4:32-1(b)(2). Once the four prerequisites are satisfied, then two basic requirements must be met to obtain class certification under (b)(2): (1)the relief sought must be injunctive; and (2) the defendant "must have acted in a consistent manner towards members of the class so that its actions may be viewed as a pattern of activity." Dhamer v. Bristol-Myers Squibb Co., 183 F.R.D. 520, 527-28 (N.D.Ill.1998). Much of the case law also discusses the implicit requirement of cohesiveness which must be present in both (b)(2) and (b)(3) suits. Barnes v. The American Tobacco Company, supra, 161 F.3d. at 142-43. In the context of a (b)(2) application, cohesiveness is considered "a natural consequence" of the second requirement. Santiago v. City of Philadelphia, 72 F.R.D. 619, 627 (E.D.Pa.1976). Accordingly, cohesiveness and the second requirement above will be considered together below under cohesiveness.
To sustain class certification under (b)(2), the plaintiff must be seeking injunctive relief; that is, the court's equitable powers must be invoked. Barnes v. The American Tobacco Company, supra, 161 F.3d. at 142. If the relief sought is entirely or predominately damages, then (b)(2) certification is inappropriate. Reilly v. Gould, supra, 965 F.Supp. at 601. Accordingly, class certification under (b)(2) will be denied to a medical monitoring claim that is incidental to monetary damages, Dhamer v. Bristol-Myers Squibb Co., supra, 183 F.R.D. at 528, or a disguised *167 request for compensatory damages, Arch v. The American Tobacco Company, 175 F.R.D. 469, 483 (E.D.Pa.1997), see Barnes v. The American Tobacco Company, Inc., 989 F.Supp. 661, 666 (E.D.Pa. 1997) (reaffirming the Arch court's holding that a medical monitoring claim can be characterized as injunctive).
Whether class action certification for a medical monitoring claim may be granted under (b)(2) turns on the precise nature of the remedy sought. A request to have the defendant pay the plaintiff a certain sum of money representing the cost of medical monitoring or an order requiring the defendant to pay plaintiffs' medical expenses directly would not constitute injunctive relief and (b)(2) certification would be inappropriate. Arch v. The American Tobacco Company, supra, 175 F.R.D. at 483. (quoting from Day v. NLO, Inc., 144 F.R.D. 330, 335-36 (S.D.Ohio 1992)). However, if plaintiffs are seeking to have a court supervised medical monitoring program, then the relief sought will be viewed as injunctive relief even though the defendants bear the cost of the program. Ibid.[2]
New Jersey case law expressly permits state courts to utilize their equitable powers to establish court administered funds for medical monitoring programs. Ayers v. Township of Jackson, 106 N.J. 557, 608-09, 525 A.2d 287 (1987). The New Jersey Supreme Court has written: "In our view, the use of a court-supervised fund to administer medical-surveillance payments in mass exposure cases, particularly for claims under the Tort Claims Act, is a highly appropriate exercise of the court's equitable powers." Ibid.
In this case the plaintiffs are seeking a court supervised lifetime medical monitoring program for all members of the class in order to screen for early detection of bladder cancer. Plaintiff is willing to fashion the remedy to meet the requirement that (b)(2) relief be injunctive.
A (b)(2) class must be cohesive in order to meet the requirement that the defendant has acted or refused to act on grounds generally applicable to the class. 6A Fed. Proc. L.Ed. § 12:198 (1989). "While 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive." Barnes v. The American Tobacco Company, supra, 161 F.3d at 143; But see O'Connor v. Boeing North American, Inc., 197 F.R.D. 404, 411-12 (C.D.Cal.2000) (Ninth Circuit refuses to require cohesiveness in a(b)(2) certification). The requirement that the class be cohesive is regarded as the "vital core" of a (b)(2) class. Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 251 (3d Cir.1975), cert. denied by 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679. Cohesiveness requires a certain "homogeneity" of the claims of the class members. Santiago v. City of Philadelphia, supra, 72 F.R.D. at 627. This "homogeneity" of class member claims has been described as the "essence" of a (b)(2) class action. 1 Newberg and Conte, supra, at § 4.20, p. 4-71. As a result, the courts are more reluctant to certify a (b)(2) class certification than a *168 (b)(3) certification when individual issues are present. Santiago v. City of Philadelphia, supra, 72 F.R.D. at 628.
Courts are reluctant to certify (b)(2) class actions where individual issues are present for two reasons. The first reason is that, unlike (b)(3) class actions, class members cannot opt out of a (b)(2) class; they are bound by the litigation. See Barnes v. The American Tobacco Company, supra, 161 F.3d at 143. "Thus, the court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representative's claims present different individual issues than the claims of the absent members present." Ibid. (quoting Santiago v. City of Philadelphia, supra, 72 F.R.D. at 628). The second reason is that the class action would serve little purpose and would become unmanageable "if significant individual issues were to arise consistently." Ibid.
In Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court discussed the concept of cohesiveness in the context of a(b)(3) certification. Amchem involved a mammoth nationwide class settlement of past and future asbestos claims, concerning a class of hundreds of thousands, if not millions, of members. The Third Circuit had reversed the class certification for settlement purposes and the Supreme Court affirmed. Among the reasons that the class was not cohesive and could not be certified were the disparate questions that arose because class members were exposed to different products, under different conditions, for different amounts of time, and with different health effects. Amchem Products, Inc. v. Windsor, supra, 521 U.S. at 623-624, 117 S.Ct. at 2250, 138 L.Ed.2d at 713 (quoting Georgine v. Amchem Products, Inc., 83 F.3d 610, 626 (3d Cir.1996)).
Requests for class action certification under (b)(2) for medical monitoring claims have been denied where the court finds that a proliferation of individual issues make class treatment inappropriate. See Barnes v. The American Tobacco Company, supra, 161 F.3d 127. In Barnes, plaintiffs sought medical monitoring for a class consisting of cigarette smokers in the State of Pennsylvania. The Court of Appeals affirmed the lower court's decision to decertify the class. After analyzing the Pennsylvania law governing the claim, the court found that too many individual issues were present to permit certification, writing:
We believe that addiction, causation, the defenses of comparative and contributory negligence, the need for medical monitoring and the statute of limitations present too many individual issues to permit certification. As in Amchem, plaintiffs were "exposed to different ... products, for different amounts of time, in different ways, and over different periods." These disparate issues make class treatment inappropriate.
[Id. at 143 (citation omitted).]
Similarly, in Thompson v. American Tobacco Company, supra, 189 F.R.D. 544 (D.Minn.1999) the court also denied (b)(2) class certification for a medical monitoring claim for cigarette smokers on the basis that the cohesive requirement was not met where individual issues abound. In Dhamer v. Bristol-Myers Squibb Co., supra, 183 F.R.D. 520, plaintiffs sought a medical monitoring program for patients nationwide who had become addicted to a nasal spray manufactured by the defendant. Class certification under (b)(2) was denied in part "because the central issue of addiction presented is so individual in nature *169 as to preclude maintenance of the classes." Id. at 529.
Prior to Amchem, some courts were more willing to certify medical monitoring class actions despite the presence of individual issues. For example, in Day v. NLO, Inc., 144 F.R.D. 330 (S.D.Ohio 1992), plaintiffs sought medical monitoring for people exposed to radioactive and hazardous materials at the defendant's facility. There the court granted (b)(2) certification, finding that the defendants had allegedly acted or refused to act on grounds generally applicable to the class as a whole. In Yslava v. Hughes Aircraft Co., 845 F.Supp. 705 (D.Ariz.1993) a medical monitoring class was certified for people who lived, worked or went to school in an area where the defendants had allegedly contaminated the ground water. (The concern with individual issues was raised under the commonality prerequisite, and there was no discussion of cohesiveness). However, as demonstrated by the Amchem, Barnes, and Dhamers cases described above, courts currently take a close look at the individual issues before certifying medical monitoring class actions.
In order to determine if the class meets the requirement of cohesiveness under (b)(2), the court must analyze the legal and factual issues involved in the specific case, and determine if the claims of class members can more sensibly be adjudicated as a group or if the case would essentially break down into litigation of individual claims due to the presence of significant individual issues.
A starting point for this analysis in the case at hand is the elements which must be proven to establish plaintiff's claim for medical monitoring. New Jersey law recognized claims for medical monitoring in the case of Ayers v. Township of Jackson, supra, 106 N.J. 557, 525 A.2d 287. That case arose when pollutants from a landfill were discovered to have contaminated the well water of residents. Among other claims and relief requested, the plaintiffs sought medical surveillance in order to have early diagnosis of illnesses caused by the pollutants. In recognizing the claim, the court wrote:
[M]edical surveillance is a compensable item of damages where the proofs demonstrate, through reliable expert testimony predicated upon the significance and extent of exposure to chemicals, the toxicity of the chemicals, the seriousness of the diseases for which individuals are at risk, the relative increase in the chance of onset of disease in those exposed, and the value of early diagnosis, that such surveillance to monitor the effect of exposure to toxic chemicals is reasonable and necessary.
[Id. at 606, 525 A.2d 287.]
In Theer v. Philip Carey Co., 133 N.J. 610, 628 A.2d 724 (1993), the New Jersey Supreme Court explained that "medical surveillance damages constitute a special compensatory remedy designed to address the unique harm entailed in an increased risk of future injury arising from the exposure to toxic chemicals. It is not easily invoked." Id. at 627, 628 A.2d 724. The claim only applied to people directly exposed to the toxic substance, and medical surveillance damages "may be awarded only if a plaintiff reasonably shows that medical surveillance is required because the exposure caused a distinctive increased risk of future injury, and would require a course of medical monitoring independent of any other that the plaintiff would otherwise have to undergo." Ibid.
In light of this law, it becomes evident that the requirement of cohesiveness cannot be met here. Resolution of this case will require the fact finder to resolve a number of individual issues concerning *170 the significance and extent of exposure by each class member to defendants' products, and whether medical monitoring is reasonable and necessary for each class member based on the class member's unique medical history (which may involve other unrelated factors that could also require the medical monitoring). In addition, the statute of limitations defense which has been asserted requires resolution of individual issues. As explained below, each of these issues raises so many individual factors that the proposed class lacks the necessary degree of cohesiveness to warrant certification.
The significance and extent of exposure to the products will have to be determined on an individual basis, since class members worked in the plant at different locations, at different times, for different lengths of time, and were exposed to different products in different forms. The class would include all workers who worked at the plant for more than 30 days from 1946 through 1983, a span of 37 years. Conditions in the plant and the form of the dyes changed throughout that time period, so that the nature of exposures in the early period differ from exposures during later periods. For example, powder dyes were used in the earlier period while liquid dyes were more prevalent in the later years. In addition, at any one time the nature of exposure will have differed depending on the location in the plant, which included several separate buildings, where the employee worked and the nature of the work being performed. For example, the degree of exposure to the dyes differed among color mixers who worked with the dye in powdered form, workers in the drying and aging department where the fabric were treated after printing, and those in the examining and shipping departments where goods were inspected and prepared for shipment. Some workers, such as the clerical workers, may not have been exposed to any dyes. Different workers will have been exposed to different dyes or different combinations of dyes. The identity of the manufacturer of the dyes involved in any particular class member's claim is further complicated by the fact that no ATP records exist which identify all of the dyes used at the plant, when or how they were used. Only five of the twenty known manufacturers that once distributed or sold benzidine-related dyes have been named as defendants. The manufacture of the dyes ended in 1972.
In addition, each member of the class must be able to show that medical monitoring is reasonable and necessary for him or her due to exposure to the defendants' products. The need for medical monitoring must be "limited and related specifically and tangibly to exposure" to the defendants' product. Id. at 628, 628 A.2d 724. Accordingly, each class member would have to show an increased risk of bladder cancer due to that person's exposure to defendant's benzidine related dyes. In addition, that exposure must result in the need for a medical monitoring program that is different from one needed if the exposure had not taken place. Barnes v. The American Tobacco Company, supra, 161 F.3d at 146. The class member must "require a course of medical monitoring independent of any other that the plaintiff would otherwise have to undergo." Theer v. Philip Carey Co., supra, 133 N.J. at 627, 628 A.2d 724. This requirement implicates the exposure to other carcinogens and health history and needs of each class member. Because of the individual issues, the necessity of each class member to establish the need for medical monitoring has been found to preclude (b)(2) class certification. Barnes v. The American Tobacco Company, supra, 161 F.3d at 146.
Finally, the resolution of defendants' statute of limitations defenses will *171 also have to be reached on an individual basis. Class action is inappropriate where the statute of limitation defense raises "individual issues which will result in a lengthy series of individual trials." Barnes v. The American Tobacco Company, supra, 161 F.3d at 149. In the instant matter in 1985, the union representing a significant portion of the ATP workforce publicized the dangers of exposure to benzidine-related dyes and invited union members, including those at ATP, to participate in a medical monitoring program screening for bladder cancer. (Thus, the very relief sought in this suit has already been offered to at least a portion of the proposed class.) In addition, the defense points to articles in local newspapers in 1985 which discussed the risks of exposure to benzidine dyes in plants in the Paterson area and the medical monitoring being done. As a result, individual issues are presented with respect to each class member on whether the class member actually knew or through the exercise of reasonable diligence should have known of the dangers presented by exposure to defendants' products and a potential claim against the defendants.
Due to the multiplicity of these issues, much of the fact finding would involve the resolution of individual claims, and the advantages and efficiencies of a class action suit would be lost. For all of the reasons set forth above, the proposed class lacks sufficient cohesiveness to support a(b)(2) class certification.
In the alternative, the plaintiffs sought class certification under (b)(3). To sustain certification under (b)(3), the court must find both "predominance" and "superiority," namely that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3).
The predominance requirement demands that the court weigh the common issues against the individual issues. This analysis does not entail merely adding up the number of individual issues and the number of common issues to see which is greater. Carroll v. Cellco Partnership, supra, 313 N.J.Super. at 499, 713 A.2d 509. Rather the court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Ibid. (quoting Amchem Prods., Inc. v. Windsor, supra, 521 U.S. at 621, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689, 712). When considering a(b)(3) application, the court has somewhat more tolerance for individual issues than in a(b)(2) application since class members in a(b)(3) certification can opt out. Santiago v. City of Philadelphia, supra, 72 F.R.D. at 628. Nevertheless, the court must make a close analysis of the facts and law in the case. See In re Cadillac, supra, 93 N.J. at 434, 461 A.2d 736. Predominance does not require that all issues be identical among class members; however, there must be a "common nucleus of facts" present. Saldana v. City of Camden, 252 N.J.Super. 188, 197, 599 A.2d 582 (App. Div.1991). The need to make individual determinations on the question of damages will not necessarily defeat (b)(3) certification. Delgozzo v. Kenny, supra, 266 N.J.Super. at 190, 628 A.2d 1080. When determining predominance, the court should scrutinize the questions surrounding liability, noting those which can be decided on a class wide basis and those which must be made on an individual basis. In re Cadillac, supra, 93 N.J. at 431, 461 A.2d 736. "A conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them." Id. at 430, 461 A.2d 736.
*172 It is difficult to show predominance in workplace exposure cases, since they often involve exposure in various settings, to multiple products over many years. In Hurd v. Monsanto Company, 164 F.R.D. 234 (S.D.Ind.1995), plaintiffs sought personal injury damage and medical monitoring on behalf of a class consisting of more than 3500 workers exposed to polychlorinated biphenyl (PCBs) from 1958 to 1977 at Westinghouse's plant in Bloomington Indiana. In denying (b)(3) class certification, the court found that individual issues predominated and wrote:
Unlike airplane crash or hotel disaster cases, which usually involve a single set of operative facts used to establish liability, this case involves continuing exposure over as many as twenty years. Undeniably, some class members have been exposed to PCBs only for a few months and at low levels, while others, for decades and at high levels. Some class members may never experience injury symptoms or will experience long latency periods because of the specific circumstances surrounding their exposure and medical histories, while others may experience almost immediate and perceptible harm. In short causation in a personal injury case predicated on exposure to PCBs "will necessarily be different for every person in the proposed class, based on each persons's length of exposure to [PCBs], notice, pre-existing medical conditions and other factors."
[Id. at 240 (citations omitted).]
Although it does not include a personal injury claim for damages, the case at hand still involves a predominance of individual issues. If the common issues are resolved in favor of the plaintiffs, a determination will still have to be made with respect to each class member whether that worker is entitled to medical monitoring relief. That decision will turn on a number of factors including whether the person was exposed to the defendants' products, and if so, the nature and duration of that exposure. Exposure to the defendants' products will differ among class members in terms of length of exposure, level of exposure, nature of exposure, and identity of products involved in the exposure. A determination of whether a class member needs medical monitoring beyond that which would otherwise be required will turn on factors involving the medical circumstances of individual class members. Resolution of the defendants' statute of limitations defenses will require fact finding for each class member individually. While the case involves certain common questions, such as the risks presented by exposure to the dyes, the adequacy of the warnings for defendants products, and general safety factors concerning the products, the individual issues predominate.
As a result, no nucleus of common facts would give rise to the remedy sought here. As one court has written, when denying an application for certification of a medical monitoring class under (b)(3): "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule (b)(3) action would be inappropriate." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir.2001) (citations omitted), amended and petition for rehearing en banc denied 273 F.3d 1266 (9th Cir.2001). Because individual issues predominate, the application for (b)(3) class certification is denied.
To sustain a class action under (b)(3), the plaintiff must also establish that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." R. 4:32-1(b)(3). Because of the multiple individual issues noted above, class certification will not obviate the necessity for substantial individual *173 fact finding. The requirement of superiority has not been satisfied.
Due to the multiplicity of individual issues in this workplace medical monitoring claim, the application fails to meet the requirement of cohesiveness necessary for (b)(2) certification and the requirements of predominance and superiority necessary for (b)(3) certification. Accordingly, the request for class certification is denied.
NOTES
[1] The term "benzidine related dyes" refers to (1) benzidine based dyes, dye intermediates, and dye concentrates; (2) ortho-tolidine-based dyes, dye intermediates, and dye concentrates, and (3) ortho-dianisidine-based dyes, dye intermediates, and dye concentrates.
[2] This approach has been taken by the Third Circuit, see Barnes v. The American Tobacco Company, supra, 161 F.3d at 142, and numerous other federal courts. See German v. Federal Home Loan Mortgage Corp., 885 F.Supp. 537, 559-60 (S.D.N.Y.1995); Thompson v. American Tobacco Company, 189 F.R.D. 544, 556-57 (D.Minn.1999); Gibbs v. E.I. DuPont, 876 F.Supp. 475, 481 (W.D.N.Y.1995); Yslava v. Hughes Aircraft Co., 845 F.Supp. 705, 713 (D.Ariz.1993). But see Cook v. Rockwell Int'l. Corp., 181 F.R.D. 473, 478-80 (D.Colo.1998); Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1196 (9th Cir.2001), amended and petition for hearing en banc denied 273 F.3d 1266 (9th Cir.2001).